FRANK STOCKDALE v JAMISON

DOROTHY STOCKDALE v JAMISON

CORBETT v JAMISON

Docket Nos. 78-4398, 78-4399, 78-4400. Submitted October 4, 1979, at Grand Rapids.—Decided August 25, 1980. Leave to appeal applied for.

Defendant Farm Bureau Insurance Group appeals from a judgment of Montmorency Circuit Court, P. J. Glennie, J., notwithstanding the verdicts, which were granted in favor of plaintiffs, Frank Stockdale, Dorothy Stockdale, and Donald L. Corbett. Plaintiffs' actions were for injuries sustained in an automobile accident involving the motor vehicle plaintiffs were riding in and another vehicle owned and operated by defendant Wayne Jamison and allegedly insured by defendant Farm Bureau Insurance Group. Farm Bureau denied coverage. Plaintiffs brought suit in Montmorency Circuit Court against Jamison and Jamison forwarded the process papers, which had been served on him, to Farm Bureau. Farm Bureau failed to file an appearance and a default judgment was entered against Jamison, P. J. Glennie, J. Plaintiffs, prior to the default judgment, had also filed suit in Wayne Circuit Court for a declaratory judgment to determine the insurance coverage of Jamison. This action resulted in a summary judgment holding that Farm Bureau owed coverage to Jamison, N. J. Kaufman, J. Farm Bureau appealed this decision and the Court of Appeals reversed. The Supreme Court then reversed the Court of Appeals and upheld the decision of the circuit court, *Corbett v Allstate Ins Co,* 396 Mich 103; 238 NW2d 30 (1976). Following the Wayne Circuit Court's summary judgment against Farm Bureau, plaintiffs filed their motions for default judgments in the Montmorency Circuit Court cases and the judgments were entered in favor of the plaintiffs in amounts exceeding the policy limit. Plaintiffs then took assignments from Jamison and

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 44 Am Jur 2d, Insurance § 1544 *et seq.*

Consequences of liability insurer's refusal to assume defense of suit against insured upon ground that claim upon which action is based is not within coverage of policy. 49 ALR2d 694.

filed garnishments against Farm Bureau in Montmorency Circuit Court. Farm Bureau offered to tender the policy amount and filed motions to set aside the default judgments. These motions were denied, P. J. Glennie, J. Farm Bureau contended in the garnishment proceedings that its liability should be restricted to the policy limits. Plaintiffs argued that when an insurer breaches its duty to defend an action against one of its insureds, it is liable for the entire amounts of the judgments without limitation to the policy amount. The court instructed the jury that unless the Farm Bureau decision not to defend Jamison was made in bad faith, Farm Bureau would only be liable for the policy amount. The jury returned a verdict in favor of Farm Bureau. The court subsequently entered a judgment notwithstanding the verdicts and reinstated the verdicts previously entered, holding that the question of good faith or bad faith was not to be considered because Farm Bureau, as a matter of law, had a duty to defend Jamison, and, by failing to defend, is liable for the entire amount of the previously entered verdicts. On appeal, the issue presented is whether an insurer, obligated under its insurance contract to defend the insured in a lawsuit wherein damages are alleged in excess of the policy limits, is liable for a judgment in excess of the policy limits when it refuses to defend, and whether an insured must first prove a bad faith state of mind on the part of the insurer in refusing to defend. *Held:*

1. An express contractual obligation to defend an insured is not dependent upon the good or bad faith of the insurer.

2. Farm Bureau had an absolute duty to defend Jamison and the trial judge was correct in stating the question of good faith on the part of Farm Bureau is not a matter to be considered. Having had an absolute duty to defend, Farm Bureau is responsible for the excess judgment.

Affirmed.

CYNAR, P.J., concurred in the result reached by the court but would distinguish an insurer's duty to defend an insured and its duty to pay a judgment. These are distinct and severable duties and the existence of one does not necessarily mean the existence of the other. The duty to defend is in some ways broader than the duty to indemnify, and, if there is any doubt whether a claim comes within the coverage of the policy, the insurer has an absolute duty to defend although it may reserve the right to refuse to pay under the policy. If Farm Bureau had undertaken to defend Jamison against this claim, as it was contractually bound to do, Farm Bureau's liability would have then been limited to the policy amount. Farm Bureau, however,

chose not to defend, and, by breaching its contractual duty, is
liable for the entire amounts.

Opinion of the Court

1. Insurance — Duty to Defend — Breach of Duty — Excess
   Judgment — Liability.

   An insurer obligated under its insurance contract to defend an
   insured in a lawsuit wherein damages are alleged in excess of
   the policy limits is liable for a judgment in excess thereof if it
   refuses to defend.

2. Insurance — Refusal to Defend — State of Mind.

   The question of whether an insurer's refusal to defend an action
   against one of its insureds is made in good faith or bad faith is
   irrelevant where the insurer is under an express contractual
   duty to defend.

Concurrence by Cynar, P.J.

3. Insurance — Duty to Defend — Duty to Pay.

   *An insurer's duty to defend an insured and its duty to pay a
   judgment are distinct and severable duties and the existence of
   one does not necessarily mean the existence of the other; the
   duty to defend is broader, and, if there is any doubt whether a
   claim comes within the coverage of the policy, the insurer has
   an absolute duty to defend although it may reserve the right to
   refuse to pay under the policy.*

*George Menendez* and *Ripple, Chambers &
Steiner, P.C.,* for plaintiffs.

*Williams, Coulter, Cunningham, Davison &
Read,* for defendant.

Before: Cynar, P.J., and D. F. Walsh and L. B.
Bebeau,* JJ.

L. B. Bebeau, J. The instant appeals are brought
by the garnishee defendant-appellant, Farm Bu-
reau Insurance Group (hereinafter Farm Bureau)
seeking a review of the trial court's granting of
judgment notwithstanding the verdict in favor of

---

* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

the plaintiffs-appellees, Frank Stockdale, Dorothy Stockdale and Donald L. Corbett.

The plaintiffs-appellees obtained an assignment of actions from principal defendant Wayne Jamison, an insured of Farm Bureau, and through garnishment proceedings sought to recover the amounts of their judgments against Wayne Jamison, which judgments exceeded the insurance policy limits issued by Farm Bureau.

The plaintiffs' actions stem from injuries sustained when the motor vehicle in which they were riding collided with a 1960 Chevrolet automobile owned and operated by principal defendant Wayne Jamison. On the date of the accident, November 9, 1969, Jamison owned a policy of automobile insurance with Farm Bureau in effect affording liability coverage up to $20,000.

After conducting its investigation of the accident, Farm Bureau concluded that its policy covered a 1959 Chevrolet truck and not the 1960 Chevrolet automobile owned and operated by Jamison.

Farm Bureau by a letter dated July 8, 1971, informed Jamison regarding the matter of policy coverage as follows:

"Dear Mr. Jamison:

We have now completed our investigation into the facts and circumstances surrounding the accident of November 9, 1969, with Mr. Frank Stockdale. Please be advised that there was no coverage available to give any consideration to claims presented by anyone regarding this accident and no claims can be paid by this company.

If you have any questions regarding this matter, please feel free to contact this office.

Sincerely yours,
L. A. Straka, Manager
Saginaw Branch Claims."

Thereafter, on October 7, 1972, separate lawsuits were commenced in Montmorency County Circuit Court by each plaintiff against Jamison for damages. He was served with process on October 25, 1972, and he forwarded the papers served on him to Farm Bureau, which did not file an appearance. As a result, a default was filed on November 15, 1972.

It is noted that the Farm Bureau communication to Jamison denying insurance coverage did not state Farm Bureau would not defend Jamison. It advised there was no coverage available and that no claims against Jamison would be paid.

Shortly after denial of coverage by Farm Bureau and the filing of actions against Jamison in Montmorency County Circuit Court on October 7, 1972, the plaintiffs commenced an action in Wayne County Circuit Court for a declaratory judgment determining the insurance coverage of Jamison. That action resulted in an opinion entered on January 30, 1974, granting summary judgment holding Farm Bureau owed coverage to defendant Jamison. This judgment was entered March 14, 1974. Defendant Farm Bureau could have, but did not, make an effort to enter the cases against its insured, Jamison, in Montmorency County Circuit Court. Farm Bureau appealed the Wayne County Circuit Court decision to this Court which reversed the circuit court decision. The Michigan Supreme Court then reversed the decision of this Court and upheld the decision of the circuit court. *Corbett v Allstate Ins Co,* 396 Mich 103; 238 NW2d 30 (1976).

After the Wayne County circuit judge's opinion

was filed on January 30, 1974, the plaintiffs filed motions for default judgments in the Montmorency County cases, and judgments were entered after hearings on March 11, 1974, in the following amounts: in favor of Dorothy Stockdale, $53,941.25; Frank Stockdale, $21,396.50; and Donald Corbett, $85,586.

After the default judgments were entered, and following the Supreme Court decision, the plaintiffs took assignments from Jamison and filed garnishment actions against Farm Bureau. Up to this time the plaintiffs' actions in Montmorency County lay dormant until June 3, 1976, when Farm Bureau took its first action in the matter of the litigation involving its insured, Jamison, by filing motions to set aside the default judgments therein entered. The motions were denied in a well-reasoned opinion of the circuit judge, who noted that Farm Bureau had been aware of the actions and judgments and failed to respond to its insured for a period of about 27 months. It was then the contention of Farm Bureau that it would be unfairly prejudiced in not having an opportunity to tender a defense on behalf of its insured, Jamison.

Plaintiffs asserted throughout the garnishment proceedings and in moving for a directed verdict and in support of their motion for a judgment n.o.v. that recent law of the state indicates that when the insurer breaches its duty to defend, as did Farm Bureau, it is liable for the entire amounts of the judgments.

The trial court instructed the jury that, unless the Farm Bureau decision not to defend Jamison was made in bad faith, Farm Bureau would not be liable for damages over the policy limit of $20,000.

The jury returned a verdict in favor of Farm

Bureau and assessed damages at $20,000, being the policy limit. Thereafter, the plaintiffs' renewed motion for a judgment notwithstanding the verdict was granted by the circuit judge in his opinion which reinstated the verdicts previously entered.

The court stated in that opinion that it found that Farm Bureau, as a matter of law, had a duty to defend Jamison and the question of good faith or bad faith was not to be considered. Having had a duty to defend, Farm Bureau is responsible for the excess judgment.

The issue before us is whether an insurer, obligated under its insurance contract to defend the insured in a lawsuit wherein damages are alleged in excess of the policy limits, is liable for a judgment in excess of the policy limits when it refuses to defend.

Farm Bureau contends that it is not liable unless the insured proves a state of mind of Farm Bureau indicating bad faith in refusing to defend the policy holder as it is required to do under its policy. Plaintiffs-appellees contend they are not required to prove a state of mind of the agents of the insurer indicating bad faith of the insurer when the insurer breached its contract to defend the insured and, when the duty and obligation was breached, Farm Bureau was liable for the consequences and the total amount of the judgments.

There is some lack of harmony in Michigan and elsewhere in resolving the issues in the case. Fifty years ago the Michigan Supreme Court decided the question of the right of an insurer to refuse to settle a claim against its insured, which claim resulted in a judgment against the insured for a sum exceeding the policy limits. Cited by Farm Bureau as authority is *City of Wakefield v Globe Indemnity Co,* 246 Mich 645; 225 NW 643 (1929),

involving one issue, the right reserved in the insurance policy of the insurer to settle a claim against the insured which right also excludes the insured from making the claim settlement. The Supreme Court guarded and protected that policy right up to the point where the good faith of the insurer could be questioned by the insured when the successful claim results in a judgment exceeding the policy limits. The burden rests upon the contesting insured to show bad faith upon the insurer in failing to settle.

Wakefield was sued by a third party. Globe Indemnity Co. carried the automobile insurance coverage on Wakefield with limits of $10,000. Globe assumed the defense of Wakefield through an attorney and an adjuster, with the Wakefield city attorney cooperating in the defense. A judgment was returned against the city for over $15,-000 and the city sought the amount in excess of the policy limits, claiming bad faith by Globe in refusing a settlement. During trial, counsel for the claimant, for the city, and for the defendant Globe reached a compromise settlement of $4,325, subject to Globe's approval. The attorney for insurer Globe concluded "the case was hopeless" and he so notified the Globe representative in Minneapolis and strongly recommended settlement, which Globe refused. The cause was submitted to the jury on the ground of ordinary negligence. Verdict and judgment was for plaintiff. The Supreme Court reversed and ordered a new trial. The basis for the reversal was that the insurance policy provided that the insurer alone had the right to compromise or settle the claim, and this was clearly stated in the policy. The Supreme Court indicated that this right is subject to the good faith of the insurer in evaluating whether or not

to settle, and the Court in discussing faith, good or bad, as the state of mind of the corporate agents, suggested a mistake of judgment is not an indication of bad faith.

This case may be cited to support the provisions of the contract of insurance that the power to control settlements is in the insurer. The insurer may settle or may not settle but it must act with good faith in resolving any conflict of interest with its insured.

The matter we have before us involves a contract to defend the insured. That contract obligation is not dependent upon the good or bad faith of the insurer.

*Myers v Farm Bureau Mutual Ins Co of Michigan,* 14 Mich App 277; 165 NW2d 308 (1968), is cited by Farm Bureau to support its position that it acted in good faith in refusing to conform to its contract with Jamison.

This Court cannot maintain support for the principles adopted in *Myers* wherein the *Wakefield* conclusions were misapplied and did not involve an express contractual obligation to defend.

Subsequent to *Myers,* this Court in *Palmer v Pacific Indemnity Co,* 74 Mich App 259; 254 NW2d 52 (1977), resolved some of the issues here considered without reference to *Wakefield* or *Myers.*

In *Palmer* the issue was whether the promise to defend provision in the insurance policy included the duty to appeal an adverse decision where the verdict exceeded the limits of the policy and the insurer believed there were no reasonable grounds upon which to base an appeal. This Court held the insurer did not limit its duty to defend, as it could, and the insured could reasonably expect the insurer to take an appeal from an adverse judgment. The insured is entitled to be defended at both the

trial level and the appellate level unless otherwise specifically set forth in the insurance contract. This Court further held in *Palmer* that the insurer was liable for any consequential damages due to its breach of duty to defend on appeal and this would include the cost of appeal and attorney fees.

The matter of faith, good or bad, on the part of the insurer, in its determination not to appeal, was not considered. However, this Court did not consider, as a justification for failure to appeal, the insurer's asserted belief that there were no reasonable grounds to appeal.

Failure of Farm Bureau to take action and enter the cases pending in Montmorency County Circuit Court against Jamison, after the Wayne County Circuit Court decision ordering insurance coverage on Jamison, was inexcusable, and if good or bad faith could be an issue or an excuse for the breach of the contract obligation, the inaction would strongly indicate a lack of good faith.

In *Jones v National Emblem Ins Co,* 436 F Supp 1119, 1124-1125 (ED Mich, 1977), Judge Charles Joiner set forth, in situations where bad faith may be an issue, certain standards which insurance companies should heed:

> "[I]t is clear that the insurer has a duty promptly and clearly to inform the insured of: (1) the possibility of a judgment in excess of the policy limits; (2) the insured's right to retain independent counsel; (3) the limits of the insurer's interest in the lawsuit; and (4) all settlement offers, including the insurer's response to such offers and the legal significance of those responses expressed in terms of the insured's liability. The extent and clarity of such notice by the insurer to the insured is a substantial factor to be weighed in determining whether the insurer handled settlement negotiations in good faith."

None of these standards were a part of Farm Bureau's transactions with its insured.

Farm Bureau had an absolute duty to defend Jamison and the trial judge was correct in stating the question of good faith or bad faith on the part of Farm Bureau is not a matter to be considered.

The judgment of the trial court is affirmed. Costs to plaintiffs.

D. F. WALSH, J., concurred.

CYNAR, P.J. *(concurring).* In concurring in the decision to affirm, I deem it necessary to write separately. While the trial court, as well as my brother, opine that the contract to defend the insured is *not dependent* upon the good or bad faith of the insurer, they stray toward well-founded, although not applicable, decisions concerned with acts of bad faith by an insurer in failing to settle. The issue in *Jones v National Emblem Ins Co,* 436 F Supp 1119, 1124-1125 (ED Mich, 1977), concerned bad faith in failing to settle. The court gave heed to follow standards which have long been recognized and followed *after* insurers assume the defense of their insured. All the same, the insurer in this case owed something more to Jamison, its insured, than the barren letter which was sent to him on July 8, 1971.

Was the defendant under obligation to defend the suit against Jamison? The contract of insurance states:

"* * * and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent".

In *City Poultry & Egg Co v Hawkeye Casualty Co,* 297 Mich 509, 512; 298 NW 114 (1941), the Court said in answer to the question of whether defendant was under an obligation to defend the suit:

"The answer to this question depends upon whether the undertaking to defend suits against the insured alleging personal injuries is independent and severable from the obligation to pay a judgment—or independent from the exception stipulating that the insurance company was not obliged to pay a judgment if the injured person was being transported at the time by the truck.

"We are of the opinion that the undertaking to defend and the undertaking for payment of damages were severable and independent."

To the same effect see *Zurich Ins Co v Rombough,* 384 Mich 228; 180 NW2d 775 (1970), and *Dochod v Central Mutual Ins Co,* 81 Mich App 63; 264 NW2d 122 (1978).

The duty to defend is distinguishable from, and in some ways broader than, the duty to indemnify. *Ins Co of North America v Forty-Eight Insulations, Inc,* 451 F Supp 1230 (ED Mich, 1978), citing *Sprayregen v American Indemnity Co,* 105 Ill App 2d 318; 245 NE2d 556 (1969), *McFadyen v North River Ins Co,* 62 Ill App 2d 164; 209 NE2d 833 (1965).

In *Maryland Casualty Co v Peppers,* 64 Ill 2d 187; 355 NE2d 24 (1976), the Illinois Supreme Court stated:

"In determining whether the insurer owes a duty to the insured to defend an action brought against him, it is the general rule that the allegations of the complaint determine the duty. If the complaint alleges facts within the coverage of the policy or potentially within the coverage of the policy the duty to defend has been established. (Citations omitted.)

"This duty to defend extends to cases where the complaint alleges several causes of action or theories of recovery against an insured, one of which is within the coverage of a policy while others may not be."

Faced with a similar situation, the Federal Court of Appeals for the Seventh Circuit forcefully stated:

"[I]t has been universally recognized that an insurer has a duty to defend under a defense clause if there is doubt whether the claim comes within the coverage of the policy." *Carboline Co v Home Indemnity Co,* 522 F2d 363 (CA 7, 1975).

In this case, as it ultimately turned out, the Wayne County Circuit Court determined that Jamison *was* entitled to coverage under the insurance contract. The Michigan Supreme Court affirmed the circuit court. However, even prior to the circuit court judgment, there was at least a doubtful or potential claim against Jamison, to which he was entitled to a defense. The letter written to Jamison, dated July 8, 1971, was insufficient to negate the insurer's duty to defend its insured. The insured as well as the insurer would have been protected had the insurer undertaken to defend the insured, while reserving the right to refuse to pay under the policy.

Based on the facts in this case, because there was an *absolute* duty to defend, I agree to affirm the judgment of the trial court.