STOCKDALE v JAMISON

Docket Nos. 66163-66165. Argued December 1, 1981 (Calendar No. 2).
　　—Decided December 23, 1982.

　　Frank Stockdale, Dorothy Stockdale, and Donald L. Corbett
　　brought separate actions in the Montmorency Circuit Court
　　against Wayne Jamison for damages resulting from an automo-
　　bile accident. The plaintiffs also filed an action in the Wayne
　　Circuit Court against the Farm Bureau Insurance Group, Jami-
　　son's insurer, and their own insurers, for a declaratory judg-
　　ment determining which insurer was required to provide liabil-
　　ity coverage. Neither Jamison nor Farm Bureau defended the
　　personal injury actions, and the Montmorency Circuit Court,
　　Philip J. Glennie, J., entered default judgments against Jami-
　　son for an amount much in excess of the policy limits. The
　　Wayne Circuit Court determined that Farm Bureau was re-
　　quired to provide liability coverage. Thereafter, the plaintiffs
　　each obtained assignments of all present or future claims which
　　Jamison might have against Farm Bureau and brought gar-
　　nishment proceedings against Farm Bureau in the Montmo-
　　rency Circuit Court. A jury returned a verdict in favor of Farm
　　Bureau, and the court, Philip J. Glennie, J., granted the
　　plaintiffs' motion for a judgment notwithstanding the verdict in
　　the full amount of the default judgments plus attorney fees,
　　costs, and interest. The Court of Appeals, Cynar, P.J., and D. F.
　　Walsh and Bebeau, JJ., affirmed (Docket Nos. 78-4398—78-
　　4400). Farm Bureau appeals.

　　In an opinion by Justice Levin, joined by Chief Justice
　　Fitzgerald and Justices Kavanagh, Williams, and Coleman, the
　　Supreme Court held:

　　A person who suffered injuries as a result of an automobile
　　accident and who obtained a default judgment against the
　　driver of the other automobile and an assignment of his claim
　　against his insurer for failure to defend the action may recover
　　no more than the insured could have recovered from the
　　insurer.

　　1. The duty of an insurer to defend an insured arises by

contract. A breach of the duty will render the insurer liable for all foreseeable damages flowing from the breach. The duty to defend is independent of the insurer's duty to pay up to the policy limits, and damages for breach are not limited to the face value of the policy. Good or bad faith on the part of the insurer is irrelevant in determining the amount of damages.

2. In this case, as assignees of Jamison, the plaintiffs are entitled to recover from Farm Bureau the same amount that Jamison would be entitled to recover if he prevailed in an action against Farm Bureau for breach. The plaintiffs acquired the right to recover from Farm Bureau the amount Farm Bureau owed Jamison as damages for its breach. That amount is fixed by measuring Jamison's actual loss as a result of the breach, principally the loss Jamison would have suffered had the plaintiffs attempted to enforce their judgments against him. Their recovery would have been limited by the amount of Jamison's assets not exempt from legal process up to the amount of the judgment. But if, as it appears, Jamison had no assets, the plaintiffs could have recovered nothing from him, because he would have lost nothing as a result of the breach.

Justice Ryan, concurring in part and dissenting in part, agreed that the judgment should be reversed and the case remanded, because the trial court failed to apply the contract law principles of causation, mitigation of damages, and measurement of damages to the facts of the case.

1. Good faith or bad faith of the insurance company is irrelevant in an action based on breach of the contractual duty to defend. The duty to defend is often contractually broader than, and separate from, the insurance company's liability in case of judgment, and the right to recover damages naturally arising from its breach is neither logically nor contractually limited to the policy limits.

2. The trial court and Court of Appeals erred in failing to apply the requirement of legal causation, holding that because Farm Bureau had a duty to defend, it was responsible for the excess judgment. The insured may recover only those damages which he can prove arise proximately from the breach of contract or were in the contemplation of the parties when the contract was made.

3. The lower courts also erred in failing to consider the insured's duty to mitigate damages. The insurer can establish a prima facie case of failure to mitigate by showing that the insured was given ample opportunity to obtain substitute counsel, and that he failed to do so. That showing can be rebutted if the insured establishes that he was unable to hire or otherwise

obtain counsel, and was unable to represent himself adequately.

4. The issue of measurement of damages is not ripe for appellate review until there is a legally sustainable finding that the defendant insurer is liable. However, the opinion of the Court discusses it, and anomalous results flow from that opinion.

Reversed and remanded.

99 Mich App 534; 297 NW2d 708 (1980) reversed.

OPINION OF THE COURT

1. INSURANCE — AUTOMOBILES — DUTY TO DEFEND — ASSIGNMENT OF CLAIMS.

A person who suffers injury as a result of an automobile accident and who obtains a default judgment against the driver of the other automobile and an assignment of his claim against his insurer for failure to defend the action may recover no more from the insurer than the insured could have recovered.

2. INSURANCE — DUTY TO DEFEND — BREACH — GOOD FAITH.

The duty of an insurer to defend the insured arises solely out of the language of the insurance contract, and a breach of that duty can be determined objectively, without reference to the good or bad faith of the insurer; good faith does not limit an insurer's liability to the insured for failure to defend, as it does for failure to settle.

3. INSURANCE — DUTY TO DEFEND — DAMAGES.

The duty of an insurer to defend an insured arises by contract, and a breach of the duty will render the insurer liable for all foreseeable damages flowing from the breach; the duty to defend is independent of the insurer's duty to pay damages up to the policy limit, and damages for breach are not limited to the face value of the policy.

4. INSURANCE — DUTY TO DEFEND — DAMAGES — ASSIGNMENT OF CLAIMS.

The amount of damages for which an insurer is liable for failure to defend an insured is fixed by measuring the insured's actual loss as a result of the breach, and a judgment creditor of the insured who takes an assignment of the insured's rights against the insurer acquires the right to recover that amount.

5. INSURANCE — DUTY TO DEFEND — DAMAGES.

The insured's loss caused by breach of the insurer's duty to defend would be principally the loss the insured would have

suffered by enforcement of the judgment against him, which would be limited by the amount of the insured's assets not exempt from legal process, and where the insured has no assets his loss as a result of the breach would be nothing.

OPINION CONCURRING IN PART AND DISSENTING IN PART BY RYAN, J.

6. INSURANCE — DUTY TO DEFEND — DAMAGES.

*The amount of damages for which an insurer is liable for failure to defend an insured is the amount proximately arising from the insurer's breach or which was in the contemplation of the parties when the contract was made, but the insured has a duty to mitigate damages; a prima facie case of failure to mitigate may be made by showing that the insured was given ample opportunity to obtain substitute counsel and failed to do so, and that showing may be rebutted by establishing that the insured was unable to obtain counsel and was unable to represent himself adequately.*

*Ripple, Chambers & Steiner, P.C.* (by *John F. Chambers*), and *Ford, Whitney & Schulz* (by *Isaac Schulz*) for the plaintiffs.

*Willingham, Coté, Hanslovsky, Griffith & Foresman, P.C.* (by *John L. Coté* and *Frederick M. Baker, Jr.*), for Farm Bureau Insurance Group.

Amici Curiae:

*Harvey, Kruse, Westen & Milan, P.C.* (by *Paul B. Hynes*), for Farmers Insurance Group.

*Eggenberger, Eggenberger, McKinney & Weber, P.C.* (by *William D. Eggenberger*), for State Farm Automobile Insurance Company.

LEVIN, J. The question presented is whether persons who suffered injuries as a result of an automobile accident and who obtained a default judgment against the driver of the other automobile and an assignment of his claim against his insurer for failing to defend the action may re-

cover from the insurer the amount of the default judgment, albeit in excess of the policy limits.

The plaintiffs, as injured persons, have no right to recover in excess of the policy limits.

We conclude that as assignees of the insured, the plaintiffs can recover no more than he could have recovered from the insurer. The insured's damages are not necessarily the amount of the judgment against him but, in general, the amount of his assets not exempt from legal process. It appears that the insured in the instant case is uncollectible and suffered no damage and, therefore, the amount of the default judgment could not have been collected from his assets. He therefore had no damages collectible from the insurer, and the plaintiffs, as his assignees, have no damages collectible from the insurer.

I

This action arises out of an automobile accident involving plaintiffs, Frank and Dorothy Stockdale and Donald L. Corbett, and the garnishee defendant's insured, Wayne Jamison. On the date of the accident, November 9, 1969, Jamison was insured under an automobile liability policy for $20,000.

Farm Bureau Insurance Group, Jamison's insurer, was required under the terms of the policy "to defend any suit against the insured seeking damages on account of * * * bodily injury or property damage" arising out of the "ownership, maintenance or use" of the vehicle described in the policy or a vehicle which "replaces" that vehicle. On the basis of Jamison's accident report, Farm Bureau learned that he had been driving a vehicle different from the one described in his policy. Because it thought this vehicle was not a

"replacement" within the terms of the policy, Farm Bureau denied coverage.

Plaintiffs filed separate negligence actions against Jamison. Shortly thereafter plaintiffs filed an action for declaratory judgments against defendant, Farm Bureau, and against their own insurance company, contending that Jamison was uninsured and that they were entitled to take advantage of their own uninsured motorist coverage.

Farm Bureau did not defend the negligence actions, and a default was taken in November of 1972. Plaintiffs subsequently reduced the default to judgment, and damages in excess of $160,000 were awarded. No appeal was taken.

The declaratory judgment action was decided adversely to Farm Bureau in the circuit court, and reversed by the Court of Appeals.[1] This Court reversed the decision of the Court of Appeals and reinstated the circuit court judgment, holding that the vehicle Jamison was driving had "replaced" the vehicle named in the policy.[2]

Plaintiffs obtained assignments from Jamison of all present or future claims against Farm Bureau, and instituted garnishment proceedings against Farm Bureau in the circuit court.

The garnishment action was tried before a jury. The trial judge instructed the jury that if Farm Bureau had denied coverage in good faith, it was not liable in excess of policy limits. The jury returned a verdict for Farm Bureau.

[1] *Corbett v Allstate Ins Co*, 62 Mich App 557; 233 NW2d 649 (1975).
[2] *Corbett v Allstate Ins Co*, 396 Mich 103; 238 NW2d 30 (1976).

After judgment was entered in favor of Farm Bureau, plaintiffs moved for a judgment notwithstanding the verdict. The trial judge granted plaintiffs' motion, set aside the judgment on the jury verdict, and entered judgment in favor of plaintiffs for the full amount of the default judgments, plus attorney fees, costs, and interest. The judge reasoned that Farm Bureau had breached its duty to defend Jamison and was therefore responsible for the entire amount of the default judgment regardless of its good or bad faith. The Court of Appeals agreed with the trial judge that the question of good or bad faith was not to be considered, and affirmed his decision.[3] We agree with the Court of Appeals that good faith is not a defense to an action for an insurer's breach of its contractual duty to defend its insured, but reverse and remand for the reasons set forth in this opinion.

II

Farm Bureau contends that "absent a showing of bad faith, an insurer's liability for failure to tender a defense to its insured is limited to the face amount of the policy".[4] Plaintiffs respond that Farm Bureau's good or bad faith does not affect its liability for breach of its contractual obligation to defend Jamison, and that Farm Bureau owes the entire amount of the default judgments as damages for breach of that obligation.

While good faith may limit an insurer's liability

---

[3] *Stockdale v Jamison*, 99 Mich App 534; 297 NW2d 708 (1980).

[4] Farm Bureau does not contest its liability to plaintiffs for the $20,000 policy limits.

to policy limits in actions for failure to settle,[5] it is not a defense to an action for breach of an insurer's obligation to defend its insured. The rule subjecting an insurer to liability to its insured in excess of policy limits for failure to act in good faith in settlement negotiations recognizes that where the insurer defends the action it has a substantial measure of control in the conduct of the lawsuit and is in a position to disregard the interests of the insured and expose him to the risk of a judgment in excess of policy limits. To protect the insured's interest, the courts have required that the insurer make reasonable efforts to settle within policy limits.[6]

A failure on the part of the insurer to settle is not necessarily unreasonable or actionable. The law does not require the insurer to settle every case. If the insurer acts in good faith, it is protected.[7]

The duty to defend, however, arises solely from the language of the insurance contract. A breach of that duty can be determined objectively, without reference to the good or bad faith of the insurer. If the insurer had an obligation to defend and failed to fulfill that obligation, then, like any other party who fails to perform its contractual obligations, it becomes liable for all foreseeable damages flowing from the breach. As this Court said in *Kewin v Massachusetts Mutual Life Ins Co*, 409 Mich 401, 420; 295 NW2d 50 (1980), holding that an insured cannot recover exemplary dam-

[5] *City of Wakefield v Globe Indemnity Co*, 246 Mich 645, 651; 225 NW 643 (1929).

[6] See Keeton, Insurance Law, § 7.8(a), p 508.

[7] *Id.*, § 7.8(b), p 510.

ages or damages for mental distress for breach of an insurance contract:

"In the commercial contract situation, unlike the tort and marriage contract actions, the injury which arises upon a breach is a financial one, susceptible of accurate pecuniary estimation. The wrong suffered by the plaintiff is the same, whether the breaching party acts with a completely innocent motive or in bad faith."[8]

Farm Bureau had a duty to defend Jamison. An insurer's duty to defend is independent of its duty to pay, and damages for breach of that duty are not limited to the face amount of the policy. When Farm Bureau breached its duty to defend, it became liable for any damages arising "naturally from the breach or * * * in the contemplation of the parties at the time the contract was made".[9]

Defendant cites numerous authorities in support of the principle that, absent bad faith, an insurer's liability for failure to defend is limited to the face amount of the policy plus the costs of defending the lawsuit.[10] In many of these cases, the insured

---

[8] *State Farm Mutual Automobile Ins Co v Skaggs,* 251 F2d 356 (CA 10, 1957), cited by plaintiffs, mistakenly analogizes a failure to settle and a failure to defend.

[9] *Kewin,* 409 Mich 414 (citing *Hadley v Baxendale,* 9 Exch 341; 156 Eng Rep 145 [1854], and 5 Corbin, Contracts, § 1007, p 70).

[10] See *Outboard Marine Corp v Liberty Mutual Ins Co,* 536 F2d 730 (CA 7, 1976); *Seward v State Farm Mutual Automobile Ins Co,* 392 F2d 723 (CA 5, 1968); *Firestine v Poverman,* 388 F Supp 948 (D Conn, 1975); *Comunale v Traders & General Ins Co,* 50 Cal 2d 654; 328 P2d 198; 68 ALR2d 883 (1958); *DeGraw v State Security Ins Co,* 40 Ill App 3d 26; 351 NE2d 302 (1976); *Manheimer Bros v Kansas Casualty & Surety Co,* 149 Minn 482; 184 NW 189 (1921); *Engeldinger v State Automobile & Casualty Underwriters,* 306 Minn 202; 236 NW2d 596 (1975); *Gordon v Nationwide Mutual Ins Co,* 30 NY2d 427; 285 NE2d 849; 334 NYS2d 601 (1972), *cert den* 410 US 931; 93 S Ct 1374; 35 L Ed 2d 593 (1973); 7C Appleman, Insurance Law & Practice, § 4689, pp 207-214; 14 Couch, Insurance, § 51:55, p 555; 1 Long, Law of Liability Insurance, § 5.05D, pp 5-41 through 5-42; 44 Am Jur 2d, Insurance, §§ 1416, 1417, pp 360-365.

*Myers v Farm Bureau Mutual Ins Co of Michigan,* 14 Mich App

hired counsel who presumably represented the insured's interests and the courts saw no reason to hold the insurer liable for the failure of counsel selected by him to obtain a less unfavorable verdict.

In some of the cited cases, the insured did not hire counsel and the same rule was applied, but it does not appear from the report that the insured was unable to hire counsel.[11] Some of the statements are dicta. Some cases state that an insurance contract is for the payment of a specific sum of money, ignoring the separate duty to defend.

In all events, we do not see any justification for a special rule limiting the amount of damages recoverable for an insurer's failure to defend or any reason why it should not be held to be responsible, just as any other party to a contract who fails to perform it, for all the loss arising naturally from the breach.

## III

As Jamison's assignees, plaintiffs are entitled to

277; 165 NW2d 308 (1968), *Foundation Reserve Ins Co v Kelly*, 388 F2d 528 (CA 10, 1968), and *Transport Ins Co v Michigan Mutual Liability Ins Co*, 340 F Supp 670 (ED Mich, 1972), also cited by plaintiffs, did not reach the failure to defend question, but were decided on the basis of a bad faith failure to settle.

[11] As a practical matter, a person who has the independent means to hire counsel will ordinarily do so, and one who does not have such independent means will frequently be uncollectible. It is for this reason that we expect that in a large number of cases where an insurer wrongfully fails to defend, the insured will be unable to show any damage. But there will be cases where the insured, although unable to fund the cost of litigation, will have assets or suffer adverse consequences by reason of an uncollected judgment.

Decision in this case does not require that we consider or resolve the extent of the insured's duty, if any, to mitigate his damages by engaging counsel to discharge the obligation which the insurer assumed and failed to discharge. Nor need we decide for what consequential damages the insured may recover and how the amount thereof shall be determined.

recover the same amount that Jamison would have recovered had he brought an action to recover damages for Farm Bureau's breach.

Plaintiffs' theory is that the default judgment against Jamison was a foreseeable result of Farm Bureau's failure to defend. Thus plaintiffs argue that the entire amount of the default judgment is recoverable as damages for Farm Bureau's breach.[12] We disagree.

When plaintiffs obtained an assignment from Jamison, they did not acquire the right to recover from Farm Bureau the amount of the default judgment. What they acquired was the right to recover from Farm Bureau the amount Farm Bureau owed Jamison as damages for the breach. That amount is fixed by measuring the actual loss suffered by Jamison as a result of the breach.[13] Thus plaintiffs are entitled to recover an amount of money equal to the actual cost to Jamison of Farm Bureau's failure to defend, principally the loss Jamison would have suffered had plaintiffs attempted to enforce their judgments against him.[14]

Had plaintiffs sought to enforce their judgments against Jamison, their recovery would have been limited by the amount of Jamison's assets not exempt from legal process. If Jamison had been a

[12] If, as the parties appear to agree, Jamison is uncollectible, then he has not been damaged by the unpaid judgment, and it is unnecessary to consider the question of causation.

[13] See, e.g., McCormick, Damages, § 137, p 560; 5 Corbin, Contracts, § 992, pp 5-7.

[14] Plaintiffs, as Jamison's assignees as well as his judgment creditors, are in the paradoxical position of arguing that had Farm Bureau defended, the excess judgment would have been lower, but that they are nonetheless entitled to recover from Farm Bureau the full amount of that excess judgment.

wealthy man, he might have been required to pay the entire amount of the judgment. But if, as appears to be the case, Jamison is judgment-proof, plaintiffs would have recovered nothing and Jamison would have lost nothing as a result of the breach.

We hold that ordinarily an insurer's liability for breach of its contractual duty to defend its insured is limited to an amount equal to the insured's assets not exempt from legal process.[15]

## IV

The parties appear to agree that Jamison is impecunious. If so, he was not monetarily damaged by the judgment entered against him, since he would not have been required to pay that judgment.[16] If plaintiffs wish to show that Jamison had assets from which they could have recovered

---

[15] Professor Keeton has suggested that this is an appropriate measure of damages for an insurer's breach of its duty to settle. Keeton, fn 7 *supra*, § 7.8(f), p 516. As Professor Keeton points out, this approach has the advantage to both parties of eliminating the need for the insured (and consequently, the plaintiff) to suffer the costs of a bankruptcy proceeding in order to establish the actual amount of loss.

See also *Harris v Standard Accident & Ins Co*, 297 F2d 627, 632-636 (CA 2, 1961), *cert den* 369 US 843; 82 S Ct 875; 7 L Ed 2d 847 (1962) (no recovery for bad faith failure to settle, where insured was insolvent before the entry of an excess judgment, and bankrupt afterwards); *Dumas v Hartford Accident & Indemnity Co*, 92 NH 140, 141; 26 A2d 361 (1942), where the court said:

"The mere existence of an outstanding judgment, which may never be paid, is not a legal injury, for the essence of the injury in such a case is pecuniary loss. *State Automobile Mutual Ins Co of Columbus, Ohio v York*, 104 F2d 730, 734 (CA 4, 1939). What the plaintiff owes may reduce the appearance of his net worth on an accountant's balance sheet, but unless he pays his debt he is not out of pocket."

Professor Keeton did not discuss taking the same approach in the failure to defend context, possibly because he did not consider that an insurer might be liable above policy limits for a judgment against an insured who is unable to mitigate his damages by obtaining counsel. Keeton, *supra*, § 7.6(e), p 484.

[16] We appreciate that Jamison might have suffered collateral damages by reason of an unpaid judgment, but the nature and amount of such damages have not been shown.

some portion of the judgment in excess of the policy limits, they may apply to the circuit court for a hearing thereon. Reversed and remanded for entry of judgments not inconsistent with this opinion.

FITZGERALD, C.J., and KAVANAGH, WILLIAMS, and COLEMAN, JJ., concurred with LEVIN, J.

RYAN, J. *(concurring in part, dissenting in part).* This case presents a deceptively simple issue of law. What damages are recoverable when an insurance company breaches the contractual duty to defend its insured?

The complexity of this issue becomes apparent only upon careful consideration of the legal concepts of legal causation, mitigation of damages, and measurement of damages as applied in various factual settings. Because the trial court failed to apply these important principles of contract law, I agree that the judgment should be reversed and this case remanded for further proceedings.

I agree with my brother that good faith or bad faith on the part of the insurance company is irrelevant in an action based on breach of the contractual duty to defend. In claiming that "good faith" is an absolute defense to liability in excess of the policy limits, the defendant Farm Bureau is confusing this case with cases alleging a bad faith refusal to settle. See *City of Wakefield v Globe Indemnity Co,* 246 Mich 645, 651; 225 NW 643 (1929). The duty to defend is often contractually broader than, and separate from, the insurance company's liability in case of judgment. *Zurich Ins Co v Rombough,* 384 Mich 228; 180 NW2d 775 (1970). The right of the insured to recover all damages naturally arising from the insurance company's breach of its contractual duty to defend

is neither logically nor contractually limited to the policy limits. *Cf. Miholevich v Midwest Mutual Auto Ins Co,* 261 Mich 495; 246 NW 202 (1933); see also *City Poultry & Egg Co v Hawkeye Casualty Co,* 297 Mich 509; 298 NW 114 (1941), allowing recovery for the costs of the defense that ought to have been provided by the insurance company. Had the defense in *City Poultry* been unsuccessful and judgment been rendered in the amount of the policy limits, it is clear that the insurer would have been liable in excess of the policy limits; that is, the policy limits plus the cost of defense.

The trial court and the Court of Appeals panel erred in failing to apply the requirement of legal causation to this case, holding that "[h]aving had a duty to defend, Farm Bureau is responsible for the excess judgment". *Stockdale v Jamison,* 99 Mich App 534, 540; 297 NW2d 708 (1980). While the immediate cause of the default judgment was the insurer's failure to provide a defense, it cannot be assumed without proof that had the insurance company provided a defense the result would not have been a judgment against the insured in excess of the policy limits.[1] We have at least some reason to believe that the amount of the default judgment was not excessive because it was entered only after the hearing required by GCR 1963, 520.2(2), at which the court heard evidence of

---

[1] Such a finding must be predicated on specific facts; for example, that a meritorious statute of limitations defense was not raised, rather than generalized speculation that competent defense counsel might have obtained a better result. It is equally easy to speculate that, had the insurance company provided a defense, the plaintiffs would have exercised their right to a jury trial and obtained an even larger verdict for pain and suffering. On this record, we fail to see any facts which would support a finding that a lesser verdict or a verdict of no liability would have been obtained had the insurance company provided a defense. However, in light of the failure of the parties to adequately frame this issue for consideration by the trial court, the most appropriate result is to allow the plaintiffs to amend their complaint to include such allegations. GCR 1963, 118.1.

negligence, causation and damages, and entered
default judgments for the three plaintiffs totalling
$160,000 rather than the $360,000 total judgment
requested in the plaintiffs' original complaints.
The insured may only recover those damages
which he can prove arise proximately from the
breach of contract or were in the contemplation of
the parties when the contract was made. *Kewin v
Massachusetts Mutual Life Ins Co,* 409 Mich 401,
414; 295 NW2d 50 (1980), citing *Hadley v Baxen-
dale,* 9 Exch 341; 156 Eng Rep 145 (1854), and 5
Corbin, Contracts, § 1007.

The lower courts also erred in failing to consider
the insured's duty to mitigate damages, that is, to
use every reasonable effort within his power to
minimize damages. *Edgecomb v Traverse City
School Dist,* 341 Mich 106, 115; 67 NW2d 87 (1954);
*Rich v Daily Creamery Co,* 296 Mich 270, 282; 296
NW 253 (1941); *Shiffer v Gibraltar School Dist Bd
of Ed,* 393 Mich 190; 224 NW2d 255 (1974). In the
usual case, the insured is obligated to mitigate his
damages by hiring substitute counsel to present
his defense. If the insured hires counsel, I see "no
reason to hold the insurer liable for the failure of
counsel selected by him to obtain a less unfavora-
ble verdict". *Ante,* p 226. Liability would then be
limited to the policy limits plus the costs of the
defense. *Ante,* fns 10 and 11.

Given the relative availability of attorneys in
this state, the insurance company can establish a
prima facie case of failure to mitigate damages by
showing that (a) the insured was given ample
opportunity to obtain substitute counsel, and (b) he
failed to do so. The insured can rebut that showing
if he establishes that he was unable to hire or
otherwise obtain counsel, and was unable to ade-
quately represent himself. If we do not enforce a

strict rule requiring the insured to mitigate damages by obtaining substitute counsel, the insured will have every incentive to default rather than defend if the lawsuit is for an amount considerably in excess of both the policy limits and the insured's assets.[2]

This rule of mitigation does not encourage the insurance company to breach its duty to defend, since, in refusing to defend, the company gives up its right to select counsel, to contest the fact and amount of liability to the tortfeasor, to approve any reasonable settlement, and other benefits. Of course, the insurer retains the right to litigate issues not necessarily decided in the original tort action, such as whether the duty to defend was breached, whether the duty to pay was breached, and what damages are properly recoverable for that breach. The insurer gains nothing financially, since it is liable for the cost of defense whether that cost is initially paid by the insurer or the insured. Upon remand, the defendant should be allowed to amend its answer to include the allegation of the failure to mitigate damages. GCR 1963, 118.1.

Recognizing that almost all cases, including this one, will probably be decided upon application of the principles of legal causation and mitigation, I

---

[2] If the insured cannot afford to obtain counsel due to insolvency, as appears to be the situation in this case, then it is unlikely that the insured will suffer any adverse consequences from the default judgment entered against him, even if a proper defense would have prevented the judgment. *Ante,* p 228 and fn 16. However, if the insured wins the state lottery, obtains an inheritance, or otherwise becomes collectible after judgment enters but before the statute of limitations runs on that judgment, see MCL 600.5809(3); MSA 27A.5809(3), he will be damaged either by the amount paid under the judgment or by the damages resulting from the need to declare bankruptcy. The difficulty, if not the impossibility, of accurately measuring such damages is a strong argument for requiring the insured to obtain substitute counsel.

would find it unnecessary to discuss the measurement of damages issue which is the basis of my brother's opinion. That issue is simply not ripe for appellate review until we are presented with a legally sustainable finding that the defendant insurer is liable. Having so said, I am constrained, nevertheless, to point out the following anomalous results flowing from my colleague's advisory opinion on the measurement of damages.

First, my brother's opinion ignores the fact that the insured, Wayne Jamison, settled the $160,000 judgment against him by giving an assignment of all his rights against his insurer, defendant Farm Bureau Insurance Group. At this time, it is of no moment whatever whether Wayne Jamison is a millionaire or a pauper; his liability to these plaintiffs has been completely discharged. He did not and cannot be forced to pay any money to the plaintiffs, nor was he forced into bankruptcy by the $160,000 judgment.[3] Since the insured was not damaged by the $160,000 judgment, the plaintiffs who have been assigned his rights under the policy have no greater rights; therefore, the liability of defendant Farm Bureau to these plaintiffs is limited to the policy limits.

Secondly, my brother's opinion fails to consider the effect of MCL 600.5809(3); MSA 27A.5809(3), which provides that a judgment of a court of record may be enforced for ten years after it was rendered, and that the judgment may be renewed. Had the insured not obtained a favorable settlement discharging his liability, the trial court

[3] Had the plaintiffs not settled with the insured, they might have obtained a judicial assignment of rights plus a judgment for the unsatisfied portion of their judgment. Having given the insured an advantageous settlement, the plaintiffs cannot then collect hypothetical damages that might have been suffered by the insured had they not settled.

would be faced with the almost impossible task of ascertaining the fair market value of a judgment against a currently insolvent plaintiff, with the finder of fact attempting to predict the garnishable assets to be accrued by the insured over the remainder of his life. The only other alternative would be to hold the case open until the insured dies and his estate is settled, requiring supplemental payments from the insurance company to the insured whenever the plaintiffs obtained money from the insured. That procedure is obviously cumbersome and lacks finality, yet it is the only way to protect an insured who suddenly becomes solvent long after the judgment against him is entered. Other difficulties with the proposed measurement of damages are likely to arise in different factual settings.

For the reasons stated, I agree that the decision of the Court of Appeals should be reversed and the case remanded for further proceedings.

RILEY, J., took no part in the decision of this case.