SEDERHOLM v MICHIGAN MUTUAL INSURANCE COMPANY

Docket Nos. 73078, 73100. Submitted October 15, 1984, at Marquette. —Decided May 6, 1985. Leave to appeal applied for.

On July 6, 1979, Lynn M. Salmi applied for automobile liability insurance coverage having policy limits of $20,000/$40,000. An independent insurance agent wrote the policy with defendant, Michigan Mutual Insurance Company. Coverage was effective immediately but subject to cancellation by defendant in accordance with statutory provisions authorizing and governing cancellations. Within the statutory time limits, defendant learned of an undisclosed driver's license suspension for failure to take an alcohol test and determined that Salmi was an unacceptable risk. Defendant undertook to cancel the policy by sending Salmi a cancellation notice by certified mail, return receipt requested, cancelling the policy effective September 13, 1979. Shortly thereafter, a refund of the unused premium was made. Salmi did not obtain replacement coverage. On December 20, 1979, while operating her motor vehicle, Salmi was involved in an automobile accident in which plaintiffs, John L. Sederholm, Jean Sederholm and John G. Sederholm, received various injuries and damages. No report, notice or claim of any kind was made to defendant or the independent agent regarding the accident. On August 21, 1980, plaintiffs commenced an action in the Houghton Circuit Court against Salmi alleging her gross negligence as the proximate cause of their injuries and damages. Salmi delivered the complaint and summons to Michigan Mutual. After reviewing its records and confirming that the policy had been cancelled more than three months prior to the accident, defendant declined to defend Salmi and

REFERENCES FOR POINTS IN HEADNOTES

[1-3, 7] 44 Am Jur 2d, Insurance § 1405 et seq.
  Insurer's tort liability for consequential or punitive damages for wrongful failure or refusal to defend insured. 20 ALR4th 23.
[3] 45 Am Jur 2d, Interest and Usury § 59 et seq.
[4, 5] 44 Am Jur 2d, Insurance §§ 1771-1773.
  Insurer's liability for consequential or punitive damages for wrongful delay or refusal to make payments due under contracts. 47 ALR3d 314.
[6] 73 Am Jur 2d, Summary Judgment §§ 26, 27.

returned the complaint and summons to Salmi. When Salmi did nothing to defend herself, plaintiffs entered her default, for failure to appear, on November 17, 1980. On December 19, 1980, plaintiffs entered into an assignment of claims and covenant not to collect judgment with Salmi, whereby they agreed not to collect any judgment they might secure against her. In return, Salmi assigned to plaintiffs a claim against defendant based upon the alleged ineffective cancellation of her insurance policy. On January 26, 1981, plaintiffs' counsel forwarded a letter to defendant advising that his clients would accept the full policy limit in settlement of their claim against Salmi. Defendant responded by indicating its failure to understand the letter inasmuch as Salmi's policy had allegedly been cancelled three months prior to the accident and there was, to their knowledge, no applicable coverage. On April 21, 1981, plaintiffs obtained and entered a default judgment against Salmi totaling $818,000, plus interest and costs, for a total exceeding $1,000,-000. On April 27, 1981, plaintiffs and Salmi entered into a second assignment of claims and covenant not to collect judgment, wherein the amount of the default judgment now secured was recited and the nature of the claim against defendant expanded. On June 5, 1981, plaintiffs commenced the instant action in the Houghton Circuit Court against defendant. Count I of the complaint alleged that defendant had an absolute duty to defend its insured and that for breach of that duty defendant should be found liable for the full amount of the default judgment plaintiffs had obtained against Salmi together with interest and costs. Count II alleged tortious bad faith in regard to defendant's failure to settle the claim against Salmi and to properly investigate the accident, the injuries and the existence of applicable coverage. Plaintiffs also sought punitive and exemplary damages. Defendant answered by denying any liability to plaintiffs and alleging the facts of the cancellation as its affirmative defense. Subsequently, defendant discovered that the form utilized in cancelling Salmi's insurance policy did not comply with stautory requirements, in that it did not note that it was unlawful to drive an automobile in Michigan without insurance coverage. Having concluded that its policy of insurance had not been properly cancelled, defendant amended its answer on July 9, 1982, to admit the existence of an applicable policy of insurance having liability limits of $20,000/ $40,000. On August 16, 1982, defendant made an offer of judgment in the full amount of its policy limit, $40,000, plus interest and costs. Plaintiffs rejected the offer. Motions for summary judgment by the plaintiffs and the defendant were thereafter denied by the trial court, Stephen D. Condon, J., on the grounds

that there were substantial issues of fact for the jury to decide. On December 23, 1982, the Supreme Court released its opinion in *Stockdale v Jamison,* 416 Mich 217 (1982), and both parties, believing that the decision was applicable to them, again filed motions for summary judgment. Plaintiffs asked for a summary judgment on the full amount of the default judgment secured against Salmi ($818,000), plus interest from August 21, 1980, the date the complaint was filed against Salmi, to the present, plus costs for a total amount exceeding $1,000,000. In addition, plaintiffs demanded penalty interest exceeding $50,000. Defendant asked for a summary judgment in its favor on any sums or interest exceeding the face amount of the policy, $40,000, plus interest thereon from June 5, 1981, the date the plaintiffs filed their complaint against defendant, to August 16, 1982, the date defendant made an offer of judgment. The trial court granted both motions in part. On count I, judgment was granted to plaintiffs for $40,000, plus $5,736 in interest and $1,341 in costs, but recovery was denied on the full amount of the default judgment, plus interest and costs thereon. Defendant's motion for summary judgment on count II was denied on the ground that the court found that genuine issues of fact concerning defendant's bad faith existed for determination by the jury. In Docket No. 73078, plaintiffs appeal as of right from that part of the trial court's order on count I denying summary judgment on the entire amount of the default judgment, plus interest and costs thereon. The judgment for $40,000, costs and interest has been paid by defendant and is not an issue in this appeal. In Docket No. 73100, after the trial court had denied a motion for summary judgment it certified that, as to count II, the question of whether the *Stockdale* rationale applies equally to count II was a controlling question of law. Leave to appeal was granted by the Court of Appeals and the appeal was ordered consolidated with Docket No. 73078. *Held:*

### *Docket No. 73078*

1. The trial court correctly determined, based upon *Stockdale,* that if plaintiffs are to recover more than the $40,000 policy limit, plus interest and costs, plaintiffs must show that Salmi had assets from which they could have recovered some portion of the judgment in excess of the policy limit or that Salmi suffered recoverable collateral damages by reason of the unpaid judgment against her. Plaintiffs' complaint did not allege any damage on the part of Salmi or that Salmi has assets exempt from legal process and plaintiffs did not amend their complaint to make such allegations. Therefore, as to count I, the trial court had no choice but to set judgment at the

policy limit of $40,000, plus interest and costs, because of plaintiffs' refusal to amend their complaint so as to rely on assets of Salmi from which plaintiffs could have recovered a portion of the default judgment in excess of the policy limits.

2. Plaintiffs' claim that interest should be computed on any amount exceeding $40,000 was rejected by the Court of Appeals. Defendant is liable for prejudgment interest only on that portion of the judgment representing the policy limit of the insurer. The defendant retained control over the investigation and litigation process in regard to the plaintiffs' action against Salmi, under the express provisions of the policy with Salmi which had not been properly cancelled by the defendant. Under the circumstances, defendant's liability should include prejudgment interest on the $40,000 from the original filing date of the action against Salmi, August 21, 1980, and ending April 21, 1981, when default judgment against Salmi was entered.

3. Postjudgment interest on the $40,000 began accruing on April 22, 1981, and stopped accruing on the date that defendant actually paid into court the amount awarded by the trial judge. The offer of judgment made by defendant on August 16, 1982, does not toll the accrual of interest on plaintiffs' claim but interest was tolled upon defendant's satisfaction of judgment on August 3, 1983.

4. The trial court did not err in refusing to award penalty interest.

The trial court's grant of summary judgment in favor of plaintiffs on count I, except for the computation of interest, was affirmed and the matter was remanded to the trial court for the reassessment of interest pursuant to the opinion. No costs were awarded.

### Docket No. 73100

5. The trial court did not err in determining that questions of fact existed regarding defendant's bad faith in refusing to settle the Sederholm-Salmi case.

6. The trial court erred in refusing to apply the *Stockdale* measure of damages to count II of plaintiffs' complaint. Such measure of damages does apply in instances where the insurer has refused to settle.

7. The covenant not to execute between plaintiffs and Salmi does not bar plaintiffs from recovering from the defendants for damages for refusal to settle. Salmi was not insulated from liability between the date of the default judgment and the date of the second assignment. Therefore, the trial court did not err when it refused to grant defendant's motion for summary

judgment on count II on grounds that the complaint failed to state a cause of action on which relief could be granted.

8. Since plaintiffs argued below that the *Stockdale* measure of damages was not applicable to instances where the insurer has refused to settle and the trial court refused to grant summary judgment on count II premised on plaintiffs' claim that *Stockdale* did not extend to instances regarding a failure to settle suits, and since the Court of Appeals determined in this action that the *Stockdale* measure does apply in such situations, the Court of Appeals determined that as to count II plaintiffs will be allowed 20 days to amend count II by alleging, if plaintiffs elect to do so, injury or damage to Salmi in excess of the policy limits, resulting or arising out of the defendant insurer's refusal to settle the claim against Salmi. The trial court erred in not granting defendant's motion for summary judgment on count II pursuant to GCR 1963, 117.2(1) for failure to state a claim. The order of the trial court denying summary judgment for defendant on count II is vacated and summary judgment for defendant is ordered, provided that plaintiffs may have 20 days to amend count II of their complaint before the order of summary judgment for defendant becomes final. If the complaint is amended within 20 days, the circuit court shall hold a hearing thereon.

With regard to Docket No. 73100, reversed and remanded to the trial court. No costs were awared. Jurisdiction was not retained by the Court of Appeals.

R. M. MAHER, J., concurred but wrote separately to indicate that, although he agrees with the majority's analysis of many of the issues raised by the parties and with the result reached by the majority, he does not agree with the interpretation given to the Supreme Court's opinions, *Denham v Bedford,* 407 Mich 517 (1980), and *Stockdale v Jamison,* 416 Mich 217 (1982), in parts (2), Docket No. 73078, and (2), Docket No. 73100 of the opinion. Despite his disagreement with the majority's interpretation of *Denham,* he noted his agreement with the majority that neither pre- nor postjudgment interest should be computed on any sum exceeding $40,000. He also disagreed with the majority's interpretation of footnote 15 in *Stockdale.* However, he agreed that limiting an insurer's liability to an amount equal to the insured's assets not exempt from legal process is appropriate in an action such as this where there is a claim for bad-faith failure to settle.

OPINION OF THE COURT

1. INSURANCE — DUTY TO DEFEND — DAMAGES — ASSIGNMENT OF CLAIMS.

The amount of damages for which an insurer is liable for failure to defend an insured or for the insurer's breach of its duty to settle is the actual loss the insured suffered because the insurer breached its duty to defend or settle, and a judgment creditor of the insured who takes an assignment of the insured's rights against the insurer acquires the right to recover that amount; the amount that may be recovered by the judgment creditor is the loss the insured would have sustained had the judgment creditor attempted to enforce the judgment, which is, for practical purposes, limited by the amount of the insured's assets not exempt from legal process.

2. INSURANCE — REFUSAL TO DEFEND — PREJUDGMENT INTEREST.

An insurer which refuses to defend its insured in a suit filed against the insured in the good-faith but erroneous belief that the policy had been cancelled may be found liable for prejudgment interest only on that portion of the judgment representing the policy liability of the insurer from the date of the filing of the complaint against the insured to the date that the judgment against the insured is entered where the insurer retained control over the investigation and litigation process and was given prompt notice of the action by the insured.

3. JUDGMENTS — INTEREST — POSTJUDGMENT INTEREST — COURT RULES.

Neither statute nor court rule expressly provides that interest may be tolled in a civil action which is not based upon tort by a written offer of settlement, whether favorable or otherwise (MCL 600.6013[5], MSA 27A.6013[5]; GCR 1963, 519).

4. INSURANCE — DENIAL OF LIABILITY — INTEREST.

Good faith on the part of the insurer in denying liability will not result in the claimant's being denied interest on the late payment of insurance benefits.

5. INSURANCE — FAILURE TO PAY BENEFITS — INTEREST.

A statute providing for the payment of penalty interest by an insurer who fails to pay in a timely manner benefits due to the insured was enacted as a means of assessing a penalty against insurers for dilatory practices in settling meritorious claims (MCL 500.2006; MSA 24.12006).

6. MOTIONS AND ORDERS — SUMMARY JUDGMENT — COURT RULES.

A motion for summary judgment brought on the ground that except as to the amount of damages there is no genuine issue

as to any material fact tests the factual accuracy of a claim; the trial court must consider all affidavits, pleadings, depositions and other documents within the record while considering the motion and give the benefit of any reasonable doubt to the opposing party; courts should be liberal in finding a genuine issue, refrain from making findings of fact or weighing the credibility of the affiants or deponents and avoid substituting a trial by affidavit and deposition for a trial by jury (GCR 1963, 117.2[3]).

CONCURRENCE BY R. M. MAHER, J.

7. INSURANCE — FAILURE TO DEFEND — PREJUDGMENT INTEREST.

*The issue of whether an insurer which erroneously refuses to defend its insured in a suit filed against the insured may be required to pay prejudgment interest on the whole judgment or only on that portion of the judgment against the insured representing the policy liability of the insurer has not been resolved by the Michigan Supreme Court.*

*McLean & McCarthy* (by *John M. McCarthy*), for plaintiff.

*Weber, Swanson, Vicary & Wietek* (by *Joseph R. Wietek*), for defendant.

Before: ALLEN, P.J., and R. B. BURNS and R. M. MAHER, JJ.

ALLEN, P.J. Plaintiffs, as assignees of Lynn Muree Salmi, one of defendant's policyholders, against whom plaintiffs had taken a default judgment in April, 1981, for $818,000, plus interest and costs, filed a two-count complaint in circuit court against defendant. Count I alleged breach of defendant's contract with Salmi by failure to defend Salmi in plaintiffs' action against her. Count II alleged tortious bad faith for defendant's failure to settle. Both parties moved for summary judgment pursuant to GCR 1963, 117.2(1) and (3). Both motions were initially denied on grounds of the existence of questions of fact for the jury.

On December 23, 1982, the Supreme Court released its opinion in *Stockdale v Jamison,* 416 Mich 217; 330 NW2d 389 (1982). Both parties felt that case supported their respective positions. Defendant again moved for summary judgment on both counts I and II, admitting liability for the full policy limit of $40,000, attending interest and costs. Plaintiffs moved for separate trials on counts I and II and for summary judgment in plaintiffs' favor on count I. In an opinion from the bench on April 8, 1983, followed by an order on July 29, 1983, the trial court granted both motions *in part.* On count I, judgment was granted to plaintiffs for $40,000, plus $5,736 in interest and $1,341 in costs, but recovery was denied on the full amount of the default judgment plus interest and costs thereon. Defendant's motion for summary judgment on count II was denied on the ground that the court found that genuine issues of fact concerning defendant's bad faith existed for determination by the jury.[1]

In Docket No. 73078, plaintiffs appeal as of right from that part of the trial court's order on count I denying summary judgment on the entire amount of the default judgment, plus interest and costs thereon. The judgment for $40,000, costs and interest has been paid by defendant and is not an issue in this appeal. In Docket No. 73100, the trial court certified that, as to count II, the question of whether the *Stockdale* rationale applies equally to count II was a controlling question of law. Leave to appeal was granted by this Court and the appeal was ordered consolidated with Docket No.

[1] At a hearing on defendant's motion for a rehearing on count II, the trial court elaborated: "[B]ut I'm just telling you what my thoughts were at the time, that the *Stockdale*—it was my opinion at the time that I rendered the decision that the *Stockdale* decision did not—was not applicable to the measure of damages in count II."

73078. Additional facts as submitted by the parties on stipulation follow.

On July 6, 1979, Lynn Muree Salmi contacted an independent insurance agent in Hancock, Michigan, and applied for automobile liability insurance coverage having policy limits of $20,000/$40,-000. A policy was written with Michigan Mutual Insurance Company. Coverage was effective immediately but subject to cancellation by Michigan Mututal in accordance with statutory provisions authorizing and governing cancellations. Within statutory time limits, Michigan Mutual learned of an undisclosed driver's license suspension for failure to take an alcohol test and determined that Salmi was an unacceptable risk. It undertook to cancel the policy. A "Cancellation Notice" was forwarded by certified mail, return receipt requested, cancelling the policy effective September 13, 1979. Shortly thereafter, a refund of the unused premium was made.

Subsequent to the cancellation, Salmi discussed with her agent the possibilities for replacemnt coverage, including the Michigan Assigned Risk Pool. She did not, however, obtain any replacement coverage. On December 20, 1979, while operating her motor vehicle, she was involved in an automobile accident in which plaintiffs sustained various injuries and damages. No report, notice or claim of any kind was made to Michigan Mutual or the independent agent regarding the accident.

On August 21, 1980, plaintiffs commenced an action against Salmi alleging her gross negligence as the proximate cause of their injuries and damages. Salmi delivered the complaint and summons to Michigan Mututal. After reviewing its records and confirming that the policy had been cancelled more than three months prior to the accident, Michigan Mutual declined to defend her and re-

turned the complaint and summons. When Salmi did nothing to defend herself, plaintiffs entered her default, for failure to appear, on November 17, 1980. Thereafter, on December 19, 1980, plaintiffs entered into an "Assignment of Claims and Covenant Not to Collect Judgment" with Salmi, whereby they agreed not to collect any judgment they *might* secure against her. In return, Salmi assigned to plaintiffs a claim against Michigan Mutual based upon the alleged ineffective cancellation of her automobile liability insurance policy.

On January 26, 1981, plaintiffs' counsel forwarded a letter to Michigan Mutual advising that his clients would accept the full policy limit in settlement of their claim against Salmi. Michigan Mutual responded by indicating its failure to understand the letter inasmuch as Salmi's policy had allegedly been cancelled three months prior to the accident and there was, to their knowledge, no applicable coverage. On April 21, 1981, plaintiffs obtained and entered a default judgment against Lynn Muree Salmi totaling $818,000, plus interest and costs, for a total exceeding $1,000,000. On April 27, 1981, plaintiffs and Salmi entered into a second "Assignment of Claims and Covenant Not to Collect Judgment", wherein the amount of the default judgment now secured was recited and the nature of the claim against Michigan Mututal expanded.

On June 5, 1981, plaintiffs commenced the within action against Michigan Mutual. Count I of the complaint alleges that Michigan Mutual had an "absolute duty" to defend its insured and for breach of that duty it is *liable for the full amount of the default judgment* plaintiffs had obtained against her together with interest and costs. Count II of plaintiffs' complaint alleges "tortious bad faith" in regard to Michigan Mutual's failure to

settle the claim against Salmi and to properly
investigate the accident, the injuries and the exis-
tence of applicable coverage. For this "miscon-
duct", plaintiffs allege that Michigan Mutual is
likewise *liable for the full amount of the default
judgment,* plus interest and costs. In addition,
plaintiffs demanded punitive and exemplary dam-
ages. Michigan Mutual, confident that its policy of
insurance had been properly cancelled, answered
by denying any liability to plaintiffs and alleging
the facts of the cancellation as its affirmative
defense.

Subsequently, Michigan Mutual discovered that
the form utilized in cancelling Salmi's insurance
policy did not comply with subsection (4) of MCL
500.3020; MSA 24.13020, in that it did not note
that it was unlawful to drive an automobile in
Michigan without insurance coverage. Having con-
cluded that its policy of insurance had not been
properly cancelled, Michigan Mututal amended its
answer on July 9, 1982, to admit the existence of
an applicable policy of insurance having liability
limits of $20,000/$40,000. On August 16, 1982,
pursuant to the provisions of GCR 1963, 519.1,
Michigan Mutual made an offer of judgment in the
full amount of its policy limit ($40,000) plus inter-
est, in accordance with the provisions of MCL
600.6013; MSA 27A.6013, and costs. The offer was
rejected by plaintiffs.

Upon amending its answer, Michigan Mutual
also amended its affirmative defenses and alleged
that plaintiffs were equitably estopped from recov-
ering any amount in excess of the policy limit
because of their misconduct, bad faith and deliber-
ate effort to create a cause of action where none
existed. The competing motions were argued be-
fore the court and on September 3, 1982, were

denied on the grounds that there were substantial issues of fact.

On December 23, 1982, the decision in *Stockdale, supra,* was released. Both parties, believing that the decision was applicable to them, again filed motions for summary judgment. Plaintiffs' motion asked for summary judgment on the full amount of the default judgment secured against Salmi ($818,000), plus interest from August 21, 1980, the date the complaint was filed against Salmi, to the present, plus costs, for a total amount exceeding $1,000,000. In addition, plaintiffs demanded "penalty interest", under MCL 500.2006; MSA 24.12006, exceeding $50,000. Defendant asked for summary judgment in favor of defendant on any sums or interest exceeding the face amount of the policy ($40,000) plus interest thereon from June 5, 1981, (the date plaintiffs filed their complaint against defendant) to August 16, 1982, the date defendant made an offer of judgment as provided by MCL 600.6013(5); MSA 27A.6013(5).

On April 8, 1983, after additional briefing and arguments, the trial court issued its opinion which held in essence:

*As To Count I (Refusal To Defend)*

(1) Plaintiffs, as assignees of the insured Salmi, can recover no more than she could have recovered from the insurer *(Stockdale v Jamison, supra).* Salmi having suffered no damages, plaintiffs are not entitled to recover anything in excess of the policy limit.

(2) Plaintiffs are not entitled to recover prejudgment and postjudgment interest based upon the amount of their default judgment.

(3) Plaintiffs are entitled to recover the policy limit of $40,000, together with interest on that amount commencing on the date of plaintiffs' action against Michigan Mututal to the date of

defendant's offer of judgment, which served to toll the accrual of additional interest.

(4) Plaintiffs are not entitled to penalty interest in the present action, as provided by MCL 500.2006(4), because policy coverage was reasonably in dispute.

(5) Plaintiffs, therefore, are entitled to judgment in the amount of the policy limit, $40,000, costs in the amount of $1,341.81, and interest from June 5, 1981, through August 16, 1982, in the amount of $5,730.46, for a total judgment of $47,072.27. With reference to the balance of plaintiffs' claim contained in count I, defendant's motion for summary judgment is granted.

*As To Count II (Refusal To Settle)*

(1) As to count II, which is termed "refusal to settle", plaintiffs' complaint does state a claim upon which relief may be granted and there are genuine issues of fact for determination. Accordingly, defendant's motion for summary judgment is denied.

The issues of fact to which the trial court referred were the presence or absence of defendant's bad faith in refusing to settle.

## THE ISSUES

Based upon the foregoing stipulated facts, we perceive the issues to be:

As to Docket No. 73078: (1) Whether plaintiffs are entitled to recover the full amount of the default judgment or, pursuant to *Stockdale v Jamison,* are limited to an amount no greater than the policy limits? (2) If recovery is limited to the policy limits, did the trial court properly compute prejudgment and postjudgment interest thereon? (3) Whether defendant's offer of judgment tolled

the accumulation of interest? (4) Whether the trial court properly refused to assess penalty interest?

As to Docket No. 73100: (1) Whether questions of fact exist in the record concerning defendant's alleged bad-faith refusal to settle? (2) Whether the measure of damages established by *Stockdale v Jamison,* a refusal to defend situation, is applicable to the instant case, a refusal to settle situation? (3) Whether the covenant not to execute between plaintiffs and Lynn Salmi bars recovery? (4) If the *Stockdale* measure of damages is applicable to count II, whether plaintiffs' failure to allege that Lynn Salmi had assets which might be reached by creditors entitled defendant to summary judgment on count II?

## DOCKET NO. 73078

### (1)

The precise issue involved herein was addressed by the Supreme Court in *Stockdale v Jamison.* In that case the plaintiffs recovered a default judgment for $160,000 against Wayne Jamison, who was insured with Farm Bureau Insurance Group. It was later determined that the insurer mistakenly and wrongfully refused to defend the suit against Jamison. Jamison assigned his claims arising from that action to plaintiffs who initiated garnishment actions against Farm Bureau. Judgment notwithstanding the verdict was entered for plaintiffs for $160,000 by the trial court. The trial court stated that Farm Bureau, as a matter of law, had a duty to defend Jamison, that the question of good faith or bad faith was not to be considered, and, because Farm Bureau did not defend its policyholder, that Farm Bureau was responsible for the excess judgment. On appeal this Court

affirmed. *Stockdale v Jamison,* 99 Mich App 534; 297 NW2d 708 (1980).

On appeal, the Supreme Court reversed. While agreeing that good faith is not a defense to an action based upon an insurer's breach of its contractual duty to defend its insured, the Supreme Court rejected the view that the measure of damages was the amount of the default judgment. Rather, the Court found that the plaintiffs were entitled to recover only the actual loss the insured suffered because the insurer breached its duty to defend. That figure is the loss the insured would have sustained had the plaintiffs attempted to enforce their judgment. For practical purposes, this is the amount of the insured's assets not exempt from legal process. This fact is made clear at footnote 12 in the majority opinion which reads:

"If, as the parties appear to agree, Jamison is uncollectible, then he has not been damaged by the unpaid judgment, and it is unnecessary to consider the question of causation." 416 Mich 227, fn 12.

Based upon *Stockdale,* we agree with the trial court that if plaintiffs in the instant case are to recover more than the $40,000 policy limit, plus interest and costs, plaintiffs must show that Salmi had assets from which they could have recovered some portion of the judgment in excess of the policy limit or that Salmi suffered recoverable collateral damages by reason of the unpaid judgment against her. The concise statement of facts stipulated to by the parties omits facts concerning Salmi's assets. However, Salmi's depositions clearly indicate that she was uncollectible. She testified during her first deposition that she had trouble paying the insurance premiums, that her only employment was substitute teaching, and

that she was receiving Aid to Dependent Children to support her family. During her second deposition, she confirmed that she had been receiving public assistance off and on for a period of about ten years before the time of the accident. She also testified that she anticipated filing bankruptcy if plaintiffs recovered a large judgment from her.

Further, plaintiffs' complaint does not allege any damage on the part of Salmi or that Salmi has assets exempt from legal process. Likewise, plaintiffs to this date have apparently been unwilling to amend their complaint to make such allegations. Although plaintiffs' brief argues that Salmi was not completely without assets, because she has a college degree in secondary education, is a substitute teacher with a 25-year work expectancy and has a possible inheritance, we are of the opinion that as to count I the trial court had no choice but to set judgment at the policy limit of $40,000, plus interest and costs, because of plaintiffs' refusal to amend their complaint so as to rely on assets of Salmi from which plaintiffs could have recovered a portion of the default judgment in excess of the policy limit. See *Jones v Schaeffer,* 122 Mich App 301, 304; 332 NW2d 423 (1982); *Reid v Allen,* 124 Mich App 56, 59-60; 333 NW2d 382 (1983). Note, however, that as to count II, *infra,* we reach a different result on this issue.

(2)

Having determined that as to count I plaintiffs are not entitled to recover the full amount of their judgment against Salmi, but instead are limited to the face amount of the policy issued to Salmi, we next inquire whether the trial court correctly computed prejudgment and postjudgment interest. As noted earlier, the trial court awarded interest on the face value of the Salmi policy ($40,000)

from June 5, 1981 (the date plaintiffs filed their complaint against Michigan Mutual) through August 16, 1982 (the date of defendant's unaccepted offer of judgment). Plaintiffs contend that prejudgment interest should commence August 21, 1980 (the date they filed against Salmi) and continue until April 20, 1981 (the date default judgment for $818,000, plus interest, was taken against Salmi). Plaintiffs also contend that they are entitled to postjudgment interest from April 20, 1981, until the judgment is paid. According to plaintiffs the interest runs on the full amount of the default judgment.[2]

At the outset we reject any claim that interest should be computed on any amount exceeding $40,000. Having determined that plaintiffs are not entitled to the full amount of the default judgment against Salmi, it makes no sense to compute pre- or postjudgment interest on any sum exceeding $40,000. Furthermore, the Supreme Court's decision in *Denham v Bedford,* 407 Mich 517; 287 NW2d 168 (1980), restricts prejudgment interest to the face amount of the policy. In that case plaintiffs recieved a jury awarded judgment of $108,025, plus $15,403 in prejudgment interest. Their insurance policy with Transamerica Insurance Group provided $40,000 maximum coverage. Transamerica paid $40,000 but declined to pay any part of the prejudgment interest on grounds that payment thereof would exceed its contractual obligation under the policy. Contrary to the argument made in plaintiffs' excellent and comprehensive brief, the Supreme Court specifically dealt with the question of whether Transamerica was liable for inter-

---

[2] Under plaintiffs' computations, when applied to the $818,000 default judgment, plaintiffs would be entitled to $3,195.61 prejudgment interest and $207,570.34 postjudgment interest as of February 2, 1983, with a daily accrual thereafter of $337.43.

est on the whole judgment or for interest on its policy limit. The Court noted that there was a split of authority on this question and noted the case law cited by defendant. *Id.,* pp 533-534. After a discussion of the issue, the Court concluded that an insurer is liable for prejudgment interest only on that portion of the judgment representing the policy liability of the insurer. Even if that part of the Supreme Court's opinion could be read as *dicta* because the Court was not asked to address the issue,[3] the fact that the Court went out of its way to address the issue suggests that the Court's conclusion to limit the judgment to the policy limits is more than mere *dicta.*

However, there is a question as to when prejudgment interest on the $40,000 begins to accrue. Defendant was not personally served in the suit against Salmi. Instead, Salmi carried her copy of the summons and complaint into defendant's office. Nor does it appear that defendant was added as a party defendant. Had defendant represented Salmi in that original action or been added as a party defendant, it clearly would have been liable for prejudgment interest, pursuant to MCL 600.6013; MSA 27A.6013, from the date of the filing of the original complaint, August 21, 1980. *Denham, supra,* 407 Mich 524, fn 2, 535-537.

The issue raised is whether defendant is nonetheless liable for prejudgment interest commencing August 21, 1980, on grounds that it had effective notice of the suit filed against its policyholder. Defendant argues that because it in good faith believed the policy was cancelled it had no control over the suit against Salmi and thus was not liable for prejudgment interest until judgment was taken

---

[3] The *Denham* plaintiffs did not assert that prejudgment interest should be paid on the entire jury awarded judgment amount.

against defendant in the second action. We disagree.

Although defendant refused to defend its policyholder in the good-faith belief that the policy had been cancelled, as it subsequently developed the policy was not cancelled. Under the express provisions of the policy, the insurer retained control over the investigation and litigation process. Contrary to defendant's claim that *Denham* requries *actual* control, we believe the thrust of the *Denham* decision rests on the control retained over the settlement and litigation process. The potential for that control existed in the instant case and defendant was given prompt notice by its insured of the action. Under these circumstances we believe that defendant's liability should include prejudgment interest on its policy liability from the original filing date. Compare *Oakwood Homeowners Ass'n, Inc v Marathon Oil Co,* 104 Mich App 689, 692-693; 305 NW2d 567 (1981); *Michigan Mututal Liability Co v Staal Buick, Inc,* 41 Mich App 625, 627-628; 200 NW2d 726 (1972), see, also, *Jaffe v Harris,* 126 Mich App 813, 819; 338 NW2d 228 (1983). For the foregoing reasons, prejudgment interest should be awarded on $40,000 commencing August 21, 1980, when plaintiffs' action against Salmi was filed, and ending April 21, 1981, when default judgment against Salmi was entered. It follows that postjudgment interest commences April 22, 1981. The date of the termination of postjudgment interest is addressed in issue (3) *infra.*

(3)

The trial court held that postjudgment interest on $40,000 terminated on August 16, 1982, the date defendant insurer made an offer of judgment in accordance with MCL 600.6013(5); MSA 27A.6013(5). That statute provides:

"(5) If a bona fide written offer of settlement in a civil action based on tort is made by the party against whom the judgment is subsequently rendered and the offer of settlement is substantially identical or substantially more favorable to the prevailing party than the judgment, the court may order that interest shall not be allowed beyond the date the written offer of settlement is made."

Plaintiffs argue that the trial court erred since the statute refers to tort actions only and because the offer of settlement excluded any interest on the Sederholm-Salmi judgment. We agree with plaintiffs.

Neither the statute, nor the court rule, GCR 1963, 519, expressly provide that interest may be tolled by a written offer of settlement, whether favorable or otherwise. The statute provides that the interest may be tolled in civil actions based upon tort. The court rule provides that if the judgment finally obtained by the offeree is not more favorable than the rejected offer, the offeree must pay the taxable costs incurred after making the offer. Interest is not tolled by the offer. See *Bertilacci v Avery,* 42 Mich App 483, 486-487; 202 NW2d 331 (1972); *McGrath v Clark,* 89 Mich App 194, 197-198; 280 NW2d 480 (1979). This Court has also determined that good faith on the part of the insurer in denying liability will not result in the claimant's being denied interest on the late benefits. *Johnston v Detroit Automobile Inter-Insurance Exchange,* 124 Mich App 212, 214-215; 333 NW2d 517 (1983).

Finally, we are not persuaded that the August 16, 1982, offer of judgment was sufficient to be recognized as a "tender" within the meaning of that term in the policy of insurance with Salmi. While recognizing that cash is no longer the only method of tender (a personal check in the amount

tendered is sufficient), plaintiffs argue that some form of cash-equivalent instrument is required under the insurance contract. When the term "tender" is construed against the drafter of the policy, we agree that something more specific than a letter was required, particularly where no interest on the default judgment was included in the offer. However, we do find that when defendant actually paid the amount which the trial court determined was due the plaintiffs further accrual of interest was tolled. This is the action which the term "tender" in the contract anticipated, requiring that the amount awarded be deposited in court. Accordingly, we hold that postjudgment interest stopped accruing on the date defendant actually paid into court the amount awarded by the trial judge.

(4)

Issues (2) and (3) concerned the award of judgment interest on the Sederholm-Salmi judgment but limited to $40,000. We now turn to the question of judgment interest due in the present action. The present action is separate and distinct from plaintiffs' original suit against Salmi. Following judgment in the instant action, defendant promptly paid the judgment amount plus interest at the customarily awarded rates. Plaintiffs contend that, pursuant to MCL 500.2006; MSA 24.12006, penalty interest at 12% computed from August 4, 1981 (60 days after the complaint in the present action was filed) until paid is due.[4] In support of this claim plaintiffs cite *Siller v Employers Ins of Wausau*, 123 Mich App 140; 333 NW2d 197 (1983).

---

[4] Plaintiffs argue that penalty interest is due on four items: (1) $40,000 policy limit, (2) costs of $1,341.81 in the Sederholm-Salmi action, (3) the prejudgment phase of the Sederholm-Salmi action, and (4) the postjudgment phase of the Sederholm-Salmi action.

In *Siller,* defendant insurer refused to pay a claim of one of its policyholders on grounds that it was barred by a coordination of benefits clause contained within the master policy. The language of the clause differed somewhat from the language required in the insurance statute and defendant had not sought the approval of the Insurance Commissioner for variation from the prescribed language. The trial court granted summary judgment to plaintiff and assessed a 12% interest penalty pursuant to MCL 500.2006; MSA 24.12006. Under that statute an insurer may refuse to pay a claim and be relieved of penalty interest only when *"the claim is reasonably in dispute".* On appeal, our Court affirmed on the ground that plaintiff's claim was not reasonably in dispute:

"* * * when the defendant refused to pay based on its invalid contract clause. Defendant may not include a contract clause in its insurance policy which is invalid in light of explicit statutory requirements, of which the defendant is deemed to be aware, and then claim it reasonably denied liability for benefits based upon such an invalid clause. The defendant rejected this claim at its own risk; its interpretation of the statutory requirements relating to its insurance policy being erroneous, the defendant properly owes the plaintiff interest on her claim pursuant to MCL 500.2006; MSA 24.12006." 123 Mich App 144.

We think *Siller* is distinguishable since there the insurer refused to pay even in the face of express statutory language to the contrary as the case progressed through the trial level and into this Court. *Id.,* pp 143-144. In the present case, as soon as the flaw in defendant's cancellation notice came to light, defendant immediately offered to settle for its liability limits under the policy, plus interest payable pursuant to the statute. The stat-

ute was enacted as a penalty to be assessed against insurers for dilatory practices in settling meritorious claims. That purpose would not be served by assessing penalty interest against defendant in the present case. Compare *Fletcher v Aetna Casualty & Surety Co*, 80 Mich App 439, 445; 264 NW2d 19 (1978). Therefore, we find no error in the trial court's refusal to assess penalty interest.

In summary, we affirm the trial court's grant of summary judgment in favor of plaintiffs on count I, except for the beginning date and ending date for the computation of interest thereon. Interest should commence August 21, 1980, rather than June 5, 1981. The offer of judgment made by defendant on August 16, 1982, does not toll the accrual of interest on plaintiffs' claim, but interest was tolled upon defendant's satisfaction of judgment on August 3, 1983. Penalty interest is not awarded. As so modified, the matter is remanded to the trial court for the reassessment of interest pursuant to this opinion. No costs, neither party having prevailed in full.

DOCKET No. 73100

In this appeal we are concerned with count II of plaintiffs' action filed June 5, 1981, to collect a previously rendered judgment against defendant's insured, Lynn Salmi, for $818,000, plus costs and interest. Unlike count I which was for breach of contract, count II sounds in tort on grounds that defendant was guilty of tortious bad faith in refusing to defend or settle for its policy limits.

Defendant's motion for summary judgment under GCR 1963, 117.2(3) as to count II was denied April 21, 1983, the trial court stating that based upon the affidavits, depositions, admissions and documentary evidence together with the pleadings,

genuine issues of fact concerning defendant's alleged bad faith in refusing to settle the Sederholm-Salmi case existed for determination by the jury. Defendant moved for rehearing on grounds that, the trial court's having applied the measure of damages set forth in *Stockdale, supra,* to count I, the same measure of damages should be applied to count II, that failure to defend under count I is no more or less a breach of contract than "bad faith failure to settle" under count II, and that, there being no allegation of damage to Salmi as a result of any breach of contract by defendant insurer, defendant was entitled on the authority of *Stockdale* to summary judgment on count II. After hearing additional argument and briefs, the trial court denied defendant's motion for rehearing on May 6, 1983, on grounds that if the *Stockdale* Court had intended the *Stockdale* measure of damages to apply to "bad faith failure to settle" situations it would have said so.

(1)

Did the trial court err in finding that questions of fact existed regarding defendant's "bad faith" in refusing to settle the Sederholm-Salmi case? Defendant argues that the entire basis of plaintiffs' claim of bad faith is three letters exchanged between counsel for plaintiffs and defendant which, even when read most favorably to plaintiffs, do not even suggest bad faith. We disagree.

There is more in the pleadings, depositions, stipulations of fact and affidavits suggesting bad faith than the exchange of letters between plaintiffs' counsel and defendant. While defendant argues that its notice of cancellation of insurance was done in good faith and the failure to comply with MCL 500.3020(4); MSA 24.13020(4) was but a mere technicality, plaintiffs have consistently as-

serted in their pleadings and briefs that the omission was willful misconduct and a knowing violation of the statute and two Insurance Bureau bulletins seeking compliance with the statute. Additionally, there are factual disputes between the parties as to whether the policy term commenced July 6, 1979 (the date Salmi filled out a formal application for insurance) or March 30, 1979 (the date Salmi claims a binder was issued to her). Depending upon which party is telling the truth on this issue, the attempted cancellation of insurance may or may not have been within the 55-day period required by MCL 500.3020(4); MSA 24.13020(4). These facts concern more than a mere technicality and, when viewed most favorably to plaintiffs, could indicate bad faith.

A motion for summary judgment brought under GCR 1963, 117.2(3) tests the factual accuracy of a claim. The trial court must consider all affidavits, pleadings, depositions and other documents within the record while considering such a motion. *Partrich v Muscat,* 84 Mich App 724, 730; 270 NW2d 506 (1978); *Rizzo v Kretschmer,* 389 Mich 363, 372; 207 NW2d 316 (1973). The benefit of any reasonable doubt is given to the opposing party. Further, this Court has determined that courts should be liberal in finding a genuine issue and refrain from making findings of fact or weighing the credibility of the affiants or deponents. They must avoid substituting a trial by affidavit and deposition for a trial by jury. *Soderberg v Detroit Bank & Trust Co,* 126 Mich App 474, 479; 337 NW2d 364 (1983); *Usher v St Paul Fire & Marine Ins Co,* 126 Mich App 443, 445-446; 337 NW2d 351 (1983). Having examined the file and accompanying affidavits and depositions, we agree with the trial court that when the facts are viewed in a light most favora-

ble to plaintiffs, the non-moving parties, a question of fact was created for jury consideration.[5]

(2)

Should the measure of damages established by the Supreme Court in *Stockdale v Jamison, supra,* be extended to the instant case? This is a question of first impression in Michigan and is the question on which leave to appeal was granted in this case. Plaintiffs argue that *Stockdale* was a contract case and is not applicable to the allegations sounding in tort contained in count II. Ergo, say plaintiffs, *Stockdale* is limited to failure to defend situations.

In fashioning the rule of damages that an insurer's liability for breach of the contractual duty to defend is limited to the policyholder's assets not exempt from legal process, the Supreme Court frankly relied upon Professor Keeton's treatise on insurance law.[6] This is apparent from footnote 15 in *Stockdale* which reads in pertinent part as follows:

"Professor Keeton has suggested that this is an appropriate measure of damages for an insurer's *breach of its duty to settle.* Keeton, [Insurance Law, § 7.8(b), p 510], § 7.8(f), p 516. As Professor Keeton points out, this approach has the advantage to both parties of eliminating the need for the insured (and consequently, the plaintiff) to suffer the costs of a bankruptcy proceeding in order to establish the actual amount of loss.

"See also *Harris v Standard Accident & Ins Co,* 297 F2d 627, 632-636 (CA 2, 1961), *cert den* 369 US 843; 82 S Ct 875; 7 L Ed 2d 847 (1962) (no recovery for bad faith

---

[5] The parties disagree as to what constitutes "bad faith". Plaintiffs favor the definition in *Wakefield v Globe Indemnity Co,* 246 Mich 645; 225 NW 643 (1929). Defendant argues that "bad faith" requires fraud, conscious dishonesty or active wrongdoing. *Medley v Canady,* 126 Mich App 739; 337 NW2d 909 (1983). We find it unnecessary to resolve the dispute because, under either definition, we believe a question of fact was created for jury consideration.

[6] Keeton, Insurance Law.

*failure to settle,* where insured was insolvent before the entry of an excess judgment, and bankrupt afterwards)." (Emphasis added.) 416 Mich 228, fn 15.

When footnote 15 was brought to the trial court's attention, the court stated that it was familiar with the footnote, but didn't agree since, "if the Court meant that, it was an easy matter for them to say—to state it to that effect". We disagree with the trial court. Based upon the clear language of footnote 15, it is apparent to us that the majority approved and accepted Professor Keeton's recommendation of damages in actions for breach of duty to settle, and the only question remaining was whether the rule should be extended to "failure to defend" situations. Accordingly, we hold that the trial court erred in refusing to apply the *Stockdale* measure of damages to count II of plaintiffs' complaint.

(3)

Defendant argues that, even if *Stockdale* is extended to the instant case, summary judgment in favor of defendant should have been granted since, in consideration for the assignment from Salmi to plaintiffs dated December 19, 1980, plaintiffs agreed to take no action against Salmi or her assets. Thus, says defendant, the covenant not to execute effectively insulated Salmi from execution or bankruptcy, making it impossible for plaintiffs to allege any damage to Salmi because of defendant's refusal to settle. The flaw in defendant's argument is that on December 19, 1980, Salmi's action for failure to defend had not yet accrued, since judgment was not taken against Salmi until April 21, 1981. In short, there was no consideration for the assignment, since no cause of action yet existed.

Further, on April 27, 1981, plaintiffs received a second assignment from Salmi. This assignment covered the same subject matter as the first assignment but added as consideration Salmi's cause of action for failure to settle. The second assignment replaced the prior assignment. Thus, between the date of the default judgment and the date of the second assignment, the insured was not insulated from liability after judgment was entered against her. Therefore, the trial court did not err when it refused to grant defendant's motion for summary judgment on count II on grounds that the complaint failed to state a cause of action on which relief could be granted.

(4)

Having determined that the *Stockdale* measure of damages is also applicable to instances where the insurer has refused to settle, the question arises as to whether or not the trial court erred in refusing to grant summary judgment in favor of defendant on count II. The thrust of defendant's motion on both count I and count II of plaintiffs' complaint was plaintiffs' failure to allege any injury or damage *to the insured,* arising out of defendant's refusal to defend and/or refusal to settle. This being so, was not defendant entitled to summary judgment on count II?

In answer to this claim, plaintiffs respond—as indeed they did to the same claim made in count I[7] —that Lynn Salmi had a teacher's degree, an equity in a home, a car, a potential for future earnings and a prospective inheritance. Plaintiffs argue that had they pursued efforts to collect against Salmi, "they could have made Mrs. Salmi's remaining lifetime very unpleasant" and could

[7] See discussion, *supra.*

show injury to Salmi exceeding the $40,000 policy
limit. We rejected plaintiffs' argument on this
point in count I, largely because of plaintiffs'
steadfast refusal to amend. However, we perceive
the situation to be different with respect to count
II.

Count I concerned a refusal to defend situation
to which the rule of damages in *Stockdale* specifi-
cally applied. Count II concerns a failure to settle
situation. By extending *Stockdale* to failure to
settle situations, we are to some extent carving out
new law. Since plaintiffs argued a contrary rule
below, and the trial court refused to grant sum-
mary judgment on count II premised on plaintiffs'
claim that *Stockdale* did not extend to failure to
settle suits, we believe that it is only fair that as
to count II plaintiffs be allowed 20 days to amend
count II by alleging, if plaintiffs elect to do so,
injury or damage to Salmi in excess of the policy
limits, resulting or arising out of the defendant
insurer's refusal to settle the claim under count II
against Salmi.

Accordingly, we conclude that the trial court
erred by not granting defendant's motion for sum-
mary judgment on count II pursuant to GCR 1963,
117.2(1) for failure to state a claim. The order of
the trial court denying summary judgment for
defendant on count II is vacated and summary
judgment for defendant is ordered, provided that
plaintiffs may have 20 days to amend count II of
their complaint before the order of summary judg-
ment for defendant becomes final. If the complaint
is so amended within 20 days, the circuit court
shall hold a hearing thereon. Our conclusion in
this respect is similar to the concluding paragraph
in *Stockdale.* There, the Supreme Court stated
that, while the parties appeared to agree that the
insured was impecunious, if plaintiffs wished to

show the insured had assets "they may apply to the circuit court for a hearing thereon". 416 Mich 228-229.

With regard to Docket No. 73100 we reverse and remand to the trial court. No costs, neither party having prevailed in full. This Court does not retain jurisdiction.

R. B. BURNS, J., concurred.

R. M. MAHER, J. *(concurring)*. I write separately because, although I agree with the majority's analysis of many of the issues raised by the parties and with the result reached by the majority, I do not agree with the interpretation given to the Supreme Court's opinions, *Denham v Bedford,* 407 Mich 517; 287 NW2d 168 (1980), and *Stockdale v Jamison,* 416 Mich 217; 330 NW2d 389 (1982), in parts (2), #73078, and (2), #73100 of the opinion.

In part (2), #73078, the majority states that:

"the Supreme Court's decision in *Denham v Bedford,* 407 Mich 517; 287 NW2d 168 (1980), restricts prejudgment interest to the face amount of the policy. * * * Contrary to the argument made in plaintiffs' excellent and comprehensive brief, the Supreme Court specifically dealt with the question of whether Transamerica was liable for interest on the whole judgment or for interest on its policy limit. The Court noted that there was a split of authority on this question and noted the case law cited by defendant. *Id.* pp 533-534. After a discussion of the issue, the Court concluded that an insurer is liable for prejudgment interest only on that portion of the judgment representing the policy liability of the insurer. Even if that part of the Supreme Court's opinion could be read as *dicta* because the Court was not asked to address the issue, the fact that the Court went out of its way to address the issue suggests that the Court's conclusion to limit the judgment to the policy limits is more than mere *dicta.*" (Footnote omitted.)

From this interpretation, the majority reasons that no interest on the judgment should be computed on any amount exceeding $40,000.

I cannot agree that the Supreme Court, in any way, resolved the issue of whether an insurer is liable for interest on the whole judgment. The Court merely noted that that particular question was the only issue pertaining to an insurer's obligation to pay costs or interest on a judgment recovered against the insured which remained unresolved at common law. *Denham v Bedford,* p 533. The Court noted that other courts have split on the issue although the majority trend is in favor of holding the insurer liable for interest on the whole judgment. The Supreme Court did not express an opinion in favor of either position but simply stated: "We note, however, that even those jurisdictions which do not follow that majority rule still require the insurer to pay interest on the policy limits, even if the total payment exceeds those limits". 407 Mich 533-534. In addition, in footnote 9, p 533, the Supreme Court expressly stated that "[a]lthough there is some Michigan authority to the contary, see, *e.g., Cates v Moyses,* 57 Mich App 405; 226 NW2d 106 (1975), *mod* 394 Mich 762; 228 NW2d 380 (1975); *Cosby [v Pool,* 36 Mich App 571; 194 NW2d 142 (1971)], this Court has never fully addressed the issue whether an insurer should be held liable for interest on the entire judgment". I note that this portion of the Supreme Courts' opinion has been interpreted twice before to "mention but not resolve" the issue of whether an insurer would be required to pay all of the interest on the judgment. See *Michigan Milk Producers Ass'n v Commercial Union Ins Co,* 493 F Supp 66 (WD Mich, 1980), and *Celina Mutual Ins Co v Citizens Ins Co of America,* 133 Mich App 655, 659; 349 NW2d 547 (1984).

However, despite this interpretaion of *Denham,* I agree with the majority that neither pre- nor postjudgment interest should be computed on any sum exceeding $40,000. I reach this conclusion based on *Cates v Moyses, supra; Cosby v Pool, supra,* and *Celina Mutual Ins Co v Citizens Ins, supra.*

I also disagree with the majority's interpretation of footnote 15 in *Stockdale v Jamison, supra.* The majority concludes that the footnote expresses the Supreme Court's intent to limit damages for an insurer's liability for breach of the duty to settle to the policyholder's assets not exempt from legal process. I beleive that the footnote, when read in context, was not placed in the opinion to address the issue of liability for breach of the duty to settle but simply as support for the Supreme Court's holding that "ordinarily an insurer's liability for breach of its contractual duty to defend its insured is limited to an amount equal to the insured's assets not exempt from legal process". 416 Mich 228.

However, I agree that limiting an insurer's liability to an amount equal to the insured's assets not exempt from legal process is appropriate in a claim for bad-faith failure to settle. The advantages recited in footnote 15 are persuasive and address the reasons for permitting recovery beyond the policy limits in actions for bad-faith failure to settle.