Sidney W. MENDELSON et al.,
Plaintiffs-Appellants,

v.

GENERAL INSURANCE COMPANY OF AMERICA, etc., Defendant-Appellee.

No. 71–1541
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Feb. 8, 1972.

Rehearing Denied March 1, 1972.

* ██ Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of N.Y., 431 F.2d 409, Part I (5th Cir. 1970).

A. Frank O'Kelley, Charles H. Spitz, Helen C. Ellis, Keen, O'Kelley & Spitz, Tallahassee, Fla., for plaintiffs-appellants.

W. K. Whitfield, Marion D. Lamb, Jr., Tallahassee, Fla., for defendant-appellee.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

Plaintiffs sued for a declaratory judgment concerning the meaning of the accounts receivable endorsement and the valuable papers endorsement on its multiperil insurance policy. We affirm in part and reverse in part.

We set out in the margin pertinent parts of the endorsement.[1] The major issues are threefold: (i) Whether "ledger cards" maintained by plaintiffs and destroyed in a fire on December 1, 1967 are "records of accounts receivable" under par. (2). (ii) If they are, are plaintiffs entitled, at the cost of the insurer, to "reestablish" the ledger cards to an extent greater than that necessary for plaintiffs to comply with the duty of attempting to collect accounts that is placed on them by the proviso to par. 1(a)? (iii) If there is such broader right of reestablishment, what period of time prior to December 1, 1967 is to be included in the reestablishment; that is, how far back in time may plaintiffs go, at the expense of insurer, in reconstructing the cards?

Plaintiffs maintained a ledger card for each customer. At the end of each month, from the underlying documents reflecting the details of each purchase, and each payment, return, and service charge, there was entered on the card a dollar item for each of the following: the customer's total charges for the month, total payments, service charge, total returns of merchandise, and the ending balance. The underlying documents were permanently recorded on duplicate microfilm tapes and then destroyed. One set of tapes was lost in the fire but another set, kept off the premises, survived. The ledger card also contained a record of reminders or duns sent the customer, and in most instances showed the customer's credit line; neither of these items appeared on the tapes. Each card contained spaces for 48 months of data, but the cards in use at the time of the fire had been in

1. ▮▮ Subject of Insurance
 [a] All sums due the Insured from customers, provided the Insured is unable to effect collection thereof as the direct result of loss of or damage to records of accounts receivable;
 [b] Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;
 [c] Collection expense in excess of normal collection cost and made necessary because of such loss or damage;
 [d] Other expenses, when reasonably incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.
The terms and conditions of this endorsement shall apply only to the Subject of Insurance hereunder and none of the terms and conditions of the policy or any other endorsement which may be attached thereto, except the cancellation provision, shall apply to the insurance hereunder.
If any of the Subject of Insurance covered by this endorsement is also covered under any other provisions of the policy to which this endorsement is attached, those provisions are hereby amended to exclude such Subject of Insurance, the intent being that the coverage under this endorsement is the sole coverage on such Subject of Insurance.
▮▮ Perils Insured. All risks of loss of or damage to the Insured's records of accounts receivable, occurring during the policy period, except as hereinafter provided."

use for only 19 months. Plaintiffs had, however, retained in their files the set of cards covering the preceding four years and from time to time used them for reference.

At the time of the fire, for the four-year cycle then in progress plaintiffs had ledger cards on approximately 15,000 customers, of whom approximately 7,000 had used their accounts within the year preceding the fire. During November 1967 the number of customers who had transactions affecting their accounts was 3,348. It is the ledger cards for these 3,348 accounts—active in the last business month—which plaintiffs claim they are entitled to reconstruct at the cost of the insurer so as to show all data for the entire 19-month period which they covered.

The defendant's position is that under (1) (d) it is required to bear only the expense of reestablishing the end-of-the-month balances as of the time of the fire on the 3,348 accounts in which there was activity during the month of November. It perceives its obligation to pay the costs of reestablishing records of accounts receivable to extend no further than these costs for whatever records it is necessary for the insureds to have in order for them to collect as many accounts as possible and thereby minimize the losses under (1) (a). The defendant perceives no obligation to restore records which is either independent of or broader than that necessitated as an incident of the 1(a) coverage on uncollectible accounts.

Plaintiffs' accounts receivable were approximately $123,000 when the fire occurred. They diligently pursued reestablishment of November 1967 records, sought the cooperation of their customers in numerous ways, and pushed the collection of accounts. The ultimate loss from accounts uncollectible because no record could be reconstructed was only

$5,591.56, and this loss occurred not from want of diligence by the plaintiffs but because underlying documents reflecting charges made within a few days preceding the fire had been destroyed before being microfilmed.

Plaintiffs filed a proof of loss claiming under 1(a) the uncollectibility loss of $5,591.56. They claimed, under 1(d), the cost of reconstructing the November 1967 records of accounts receivable. Included therein were items for printing, microfilm, computer use, cost of letters to customers,[2] cost of new ledger cards and printing the customers' names thereon, and the cost of machine posting to each card the normal entries for November. This last item, machine posting, was $1,036.42. Also, under 1(d), the plaintiffs claimed the cost of similar machine posting for the 18 preceding months at $1,036.42 per month, and it is this item on which the parties differ.

The insurer rejected plaintiffs' claims, taking the position that the endorsement provided coverage "only against loss of debt, plus reasonable expense incurred in establishing evidence of the total indebtedness of customers, as of December 1, 1967." Plaintiffs sued. By amended answer the defendant admitted it was liable for the 1(a) uncollectibility loss and for all of the 1(d) claim for setting up and imprinting names on the cards and for machine posting the November data thereon. But it denied liability for the cost of machine posting for all earlier periods. The parties agreed that if plaintiffs were entitled to reestablish the ledger cards for any or all of the 18 preceding months the reasonable cost would be $1,036.42 for each such month.[3]

■ The District Court found that the ledger cards were not "records of accounts receivable" but were only a type of "credit summary." This finding was plainly erroneous, requiring reversal. It is inconsistent with the insurer's recog-

2. To let them know the store had records of their accounts on microfilm, thereby minimizing collection problems. Probably this correctly fell under 1(c).

3. The other reestablishment costs were non-recurring.

nition of coverage to the extent of supplying new cards, imprinting customers' names, and posting November data. If the cards were only credit documents there would be no coverage under 1(d) for reestablishing them. The cards were useful, and used, for credit purposes, along with other credit data maintained (credit application cards and credit reports). There was testimony concerning information on the cards which was used for credit purposes—the credit limit, monthly balance, number and promptness of payments, number of delinquency notices, number of returns of merchandise, some or all of which would seem to have relevance to an accounts receivable record as well as a credit record. The court appeared to consider that "records of accounts receivable" had to be either the cards or the microfilm tapes, and to exclude the possibility that the complete system of records of accounts receivable was comprised of both cards and microfilm. The tapes reproduced the underlying documents, but did not cumulate for each month the purchases, payments, service charges,[4] or returns, and, of course, showed no beginning or ending balances. They were simply a repository for raw data in condensed form, permitting regular destruction of thousands of pieces of paper. From time to time reference was made to the tape for details of specific transactions. But there was testimony that the cards were the "key" to the tapes, without which the tapes were of little or no value, and that without the cards the store would not know which roll of tape to examine.

The trial court relied upon language from Ross v. Employers' Liability Assur. Corp., 290 F.Supp. 569, 576 (N.D. Miss.1968) that "to 'reestablish' an account receivable within the meaning of [the] policy, there must survive the casualty event records adequate for the insured to give to a customer a satisfactory explanation of the debit and credit items in an account, when confronted with reasonable inquiry as to the balance claimed to be due by the insured," and found that the ledger cards did not rise to this standard because they were not adequate to explain to a customer the debit and credit items of his account, such as explanation requiring reference to the microfilm tapes. But *Ross* was concerned with a different issue. There the insured had reestablished no records although there survived the catastrophe (a theft) fragmentary data from which there could be some reconstruction. The insured made no effort to effect collection of his accounts and simply claimed all of them as uncollectible under 1(a). He made no claim under 1(d), having incurred no expense. Thus, the court was not defining "records of accounts receivable" as maintained in regular course of business but was describing the extent of the information which the insured, under principles of minimizing damages, was required to put to use—if he possessed it —in attempting to collect his accounts. To the extent he could so reestablish his records, and had failed to do so, he could not recover under 1(a).

■ In the instant case the District Court, in what seems to be an alternative ground of decision though not clearly delineated as such, appeared to say that even if the ledger cards were records of accounts receivable there could be no liability for machine posting the data onto them ("reestablishing") for any period or periods prior to November 1967. This conclusion, we conclude, must be reconsidered by the District Court on a better record. The record is abysmally thin. In an unexplored area of the law, the parties gave the trial court few tools with which to work, only a very little expert testimony from other merchants, no testimony or authoritative publications from insurance experts. For example, an insured may insist that he is substantially inter-

---

4. For income tax purposes, some customers requested yearly totals of service charges paid. This data was obtained from the ledger cards.

ested in his past records and understood that he was buying coverage that would replace them. But from the insurer's viewpoint, in the case of a large and long-established enterprise, this may be a great exposure. Also, an argument can be constructed that the insurer's position is inconsistent with general principles of mitigation. Presumably, in most cases the accounts themselves will represent larger exposure than the cost of reconstructing the records which reflect the accounts. The possibility of post-event argument about the extent to which the insured can recover for reestablishing records arguably will tend to inhibit insureds from diligently pursuing the duty which *Ross* teaches is placed upon them. However, from its viewpoint the insurer may respond that while there can be reasonable differences of opinion concerning the extent of reestablishment necessary to support collectibility, as of some past date reestablished records cease to have any substantial relation to collectibility, and it is not bound to pick up the check for all because it must pay for some.

If there is any obligation on the insurer to pay the expenses of reestablishment of records for some period or periods prior to November 1967, then, as the parties put it, "how far back do we go?" In attempting to establish this, the parties might well recognize that there are, even within the phrase "records of accounts receivable," various possible meanings that can be assigned by storekeepers, insurance men, accountants, and judges, too.[5]

The trial court also found that there was no compelling reason to reconstruct the cards for periods prior to November 1967 because plaintiffs had been able to collect their accounts without them. If coverage under 1(d) is broader than, or independent of, the reestablishment necessary to minimize 1(a) claims, the insured's reasons for availing himself of 1(d) coverage would not seem to be of judicial concern, unless it bears on the limitation in 1(d) of "reasonably incurred." Whether "reasonably incurred" is a limit on only the cost of reestablishment and not on the scope of what is to be reestablished is another matter to be determined on remand.

■ Plaintiffs make a separate argument that, by reason of interplay of the accounts receivable endorsement and the valuable papers endorsement, they are entitled to recovery under the former for credit files on customers. Without developing this claim at length, we say only that it is without merit.

We reverse the denial of 1(d) coverage for the 18 months preceding March 1967 and remand for further proceedings not inconsistent with this opinion. In all other respects the judgment is affirmed. Costs are taxed against appellee.

5. Including:
   (a) A record of an account on which, as of the fire, there was a balance due the insured, but including only transactions within the past month. In effect this is defendant's definition.
   (b) A record of an account on which, as of the fire, there was a balance due the insured, but including transactions back to the last date on which the account was in a zero balance (i. e., back to the time nothing was "receivable").
   (c) A record of an account on which, as of the fire, there was a balance due the insured, but going back to the time the record of the account commenced—a full "history of the account" for each account on which there was some amount currently receivable as of the fire. This is plaintiffs' approach, but they limit the history to 19 months.
   (d) An accountant's concept, covering all accounts maintained by the insured in its system for recording accounts receivable, without regard to whether accounts have balances currently outstanding or even recent activity. Under this approach the insurer's exposure would extend to many thousands of inactive records.
There are numerous other variants as well.