**ZAMPLAS JOHNSON, P.C. a Michigan corporation and the Law Firm of Victoria, P.L.L.C., a Michigan corporation Plaintiffs/Counter–Defendants,**

v.

**The CINCINNATI INSURANCE COMPANY, an Ohio corporation, Defendant/Counter–Plaintiff,**

No. CIV. 04–70441.

United States District Court,
E.D. Michigan,
Southern Division.

April 25, 2005.

Daniel E. Morrisroe, Birmingham, for plaintiff.

Alan G. Gregory, Troy, for defendant.

### MEMORANDUM OPINION AND ORDER

TAYLOR, District Judge.

### I.

#### Introduction

This motion to dismiss and for partial summary judgment of Plaintiffs' claims, arises out of an action alleging Defendant's breach of contract, violations of Unfair Trade Practices, and for unjust enrichment. Plaintiffs contend that Defendant breached its insurance contract by failing to pay complete relief for the damages and work loss suffered. For the reasons explained below, the Defendant's motion is GRANTED in part and DENIED in part.

### Background

The complaint herein alleges that Defendant breached its property insurance policy with Plaintiffs by failing to cover costs for business income losses. On September 18, 1998, Plaintiffs' law firm had suffered damage to their telephone and computer network as a result of a lightning strike. Plaintiffs claim here that the Defendant owes it an outstanding sum of $112,497.12 for property damages and accounts receivable losses from Plaintiffs' inability to make timely billing because of damage to their computers. Plaintiffs have since recovered $16,599.16 on their accounts receivable claim, bringing the total to $95,897.77.

Plaintiffs filed a four count complaint[1] alleging: (I) that Defendant materially breached the policy by failing to provide complete relief for the damages and work loss suffered; (ii) Defendant's bad faith handling of Plaintiffs' claim violated the Unfair Trade Practices Act ("UTPA"); and (iii) that Defendant was unjustly enriched. Plaintiffs contend that they are owed damages in the amount of $95,897.77, plus interest cost in the amount of $35,241.45, incurred as a direct result of Defendant's failure to pay the loan, as well as exemplary or punitive damages, and attorney fees.

---

1. Plaintiffs first count reads "General Allegations," providing the factual basis of Plaintiffs' Complaint. The remaining three counts are for Breach of Contract, Violations of Unfair Trade Practices (Bad Faith), and Unjust Enrichment. Under claims two and three Plaintiffs request that the Court impose exemplary or punitive damages and impose attorney fees.

Defendant filed a motion to dismiss and for partial summary judgment, arguing that an insured may not maintain a private cause of action under the UTPA, absent tortious conduct; that Michigan law does not recognize a bad-faith claim for unjust enrichment and; that Plaintiffs' claims for exemplary or punitive damages and attorney fees are not recoverable for breach of an insurance contract and should be dismissed pursuant to Rule 12(b)(6).[2] Further, Defendant filed a motion for partial summary judgment, arguing that the appropriate remedy for breach of contract is the mandatory statutory appraisal procedure pursuant to the policy provision and MCL 500.2833(m).

## II.

### Legal Standard

In considering a motion to dismiss brought pursuant to the Fed.R.Civ.P. 12(b)(6), a court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III.

### Analysis

### A. UNFAIR TRADE PRACTICES ACT CLAIM

■ Michigan legislators enacted the UTPA for the purpose of imposing penalties on insurers "who procrastinate or are dilatory in paying meritorious claims in bad faith." *Burnside v. State Farm Fire & Casualty Co.*, 208 Mich.App. 422, 528 N.W.2d 749, 753 (1995). Failure to pay proceeds on a timely basis is considered an unfair trade practice and may subject the insurer to the imposition of twelve percent penalty interest, starting sixty days after satisfactory proof of loss is received on Plaintiffs' total claim, provided the claim is not reasonably in dispute. *See* MCLA 500.2006(1); M.S.A. 24.12006(1). The Sixth Circuit has determined that whether a claim is "reasonably in dispute" is a matter of law for a court to decide. *See All American Life & Cas. Co. v. Oceanic Trade Alliance Council Intern., Inc.*, 756 F.2d 474, 482 (6th Cir.1985).

■ Plaintiffs claim that Defendant delayed and failed to respond to its repeated inquiries in bad faith, triggering its right to seek the penalties provided under the UTPA. Specifically, Plaintiffs contend that "[d]efendant ignored this claim" after Plaintiffs provided its amended request on September 15, 2000. Plaintiffs made two additional inquiries as to the status of its claim on November 6, 2000, and January 3, 2001, both of which were ignored by the Defendant. *Id.* On April 13, 2001, Plaintiffs again inquired as to the status of its claim. Defendant responded that its cur-

---

**2.** Plaintiffs concede that its motion for unjust enrichment and attorney fees should be dismissed. (Resp. Br. at 18).

rent counsel had taken this matter over from prior counsel. Defendant then ignored two additional requests made by the Plaintiffs.

It was not until September 21, 2001, that Defendant requested that Plaintiff Dennis Zamplas ("Zamplas") submit to an examination under oath. After further delays on the part of the Defendant, Zamplas' examinations took place on October 22, 2001, and February 12, 2002. Following the February examination, Defendant requested additional documents and scheduled a final meeting with the forensic accountant, Toni Berti ("Berti"), which was not held until April 30, 2002.

It is this series of delays and non-responsive conduct on the part of the Defendant that forms the basis of Plaintiffs' claim for twelve percent interest under the UTPA. Further, Plaintiffs contend that the claim was not reasonably in dispute, but that Defendant simply procrastinated and was dilatory in paying its meritorious claim.

Defendant responds that Plaintiffs' voluntary reduction of the amount of their claim from $171,130 to $143,644.93, along with troubling questions arising from Zamplas' testimony regarding an employee's departure from the Plaintiffs' employment, caused their claim to be reasonably in dispute, negating Plaintiffs' attempt to recover twelve percent interest under the UTPA. (Def.'s Br. at 15). Defendant contends that Plaintiffs, in their loss claim, asserted that they sustained extra expenses resulting from the layoff of an employee, Mary Ramsey ("Ramsey"), in a letter dated September 12, 2000. However, Defendant contends Zamplas testified that Ramsey's departure related to allegations of the appropriation of a computer for personal use by Ramsey's husband-not from the lightning strike. Defendant stat-

ed that it paid $29,049 extra expense in reliance upon Plaintiffs' misrepresentation. Additionally, after being presented with Berti's report, Plaintiffs voluntarily reduced the amount of their claim, but subsequently submitted a bill in the amount of $54,800.19 for accounts receivable losses, causing Defendant to further dispute Plaintiffs' claim.

Viewing Defendant's motion for summary judgment in the light most favorable to Plaintiffs, the Court finds that there is a factual dispute whether Plaintiffs misrepresented the nature of Ramsey's dismissal. Nothing contained in the September 12, 2000, letter supports Defendant's contention that Plaintiffs misrepresented the nature of her dismissal. Furthermore, Defendant's contention that Plaintiffs' claim is reasonably in dispute because Plaintiffs adjusted their claim after receiving Berti's report is erroneous. As an initial matter, on September 12, 2000, Plaintiffs reviewed and agreed with some of Berti's findings, adjusting their claim accordingly. Three days later, Plaintiffs notified Defendant of an additional $54,800.19 realized after determining that they would not be able to recover losses on accounts receivable because of computer damage. It was after this notification on September 15, 2000, that Plaintiffs contend Defendant failed to respond and engaged in dilatory conduct. Defendant had ample opportunity to review and inform the Plaintiffs that these submissions were in dispute. It failed to do so.

Here, factual issues abound as to whether Defendant procrastinated and engaged in dilatory tactics on Plaintiffs' claim following Plaintiffs' September 15, 2000, letter. For the foregoing reasons, Defendant's motion to summarily dismiss Plaintiffs' claim under the UTPA is DENIED.[3] *See* MCLA 500.2006(1).[4]

---

**3.** Plaintiffs' claim under the UTPA is dismissed with respect to any interest costs

claimed before November 15, 2000, which is

## B. INTEREST ON LINES OF CREDIT

■ The Defendant has moved to dismiss Plaintiffs' claim for interest costs on two lines of credit Plaintiffs obtained to continue to operate its business. Plaintiffs contend that they were required to borrow significant amounts of money in order to maintain business operations as a direct result of Defendant's delay in addressing their claim and that they have incurred interest costs in the amount of $35,241.45. (Compl. at 9). Defendant contends that interest costs on a line of credit is an extra expense or consequential loss, which is expressly prohibited by the terms of the policy.[5]

Plaintiffs, citing the same policy language as Defendant, contend that interest costs on lines of credit are covered under Business Income[6] Loss and is not an extra expense or consequential loss. Plaintiffs' comptroller testified that the firm had "[t]o borrow money for operations because [Plaintiffs] didn't have income because of the loss of income, i.e. paying bills and making payroll, including overhead, rent, supplies, anything that's involved in running the law firm and making payroll," (Resp. Br. at 9–10). Plaintiffs further contend that the "Exclusions" section of the policy is contrary to the language providing coverage for this loss and should be strictly construed against the Defendant. See Advance Watch Company Ltd., v. Kemper National Insurance Co., 99 F.3d 795, 800 (6th Cir.1996) ("whenever terms are ambiguous, courts are required to construe the language in the light most favorable to the insured") (citing Powers v. Detroit Auto. Inter–Insurance Exchange, 427 Mich. 602, 398 N.W.2d 411, 419 (1986)). The Court finds that material fact issues exist as to whether interest costs on lines of credit are expressly prohibited under the policy. Accordingly, Defendant's motion to summarily dismiss Plaintiffs' claim for interest costs on lines of credit is DENIED.

## C. ACCOUNTS RECEIVABLE LOSSES

■ Defendant contends that Plaintiffs' claim for accounts receivable losses should be dismissed for failing to present any evidence substantiating the loss. Plaintiffs

---

sixty days after Plaintiffs submitted its final claim.

4. M.C.L.A. 500.2006 reads in relevant:
 Sec. 20006. (1) A person must pay on a timely basis to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance ... or, in the alternative, the person must pay to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance .... 12% interest, as provided in subsection (4), on claims not paid on a timely basis. Failure to pay claims on a timely basis or to pay interest on claims as provided in subsection (4) is an unfair trade practice unless the claim is reasonably in dispute.

5. The policy reads in relevant part:
 4. Business Income and Extra Expense Exclusions. We will not pay for: a. Any Extra Expense, or increase of Business Income loss, caused by or resulting from:
 (1) Delay in rebuilding, repairing or replacing the property or resuming 'operations,' due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or
 (2) Suspensions, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of 'operations,' we will cover such loss that affects your Business Income during the 'period of restoration.'

6. " 'Business Income' means that: (1) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and (2) Continuing normal operation expenses incurred, including payroll." (Resp. Br. at 9)

claim that it suffered accounts receivable losses when it was unable to provide timely billing to its clients due to damage to its computers from the lightning strikes. Defendant contends that Plaintiffs' loss was caused by its failure to provide timely billing since there was no actual damage to the accounts receivable records. *See e.g. Mendelson v. General Ins. Co. of America,* 455 F.2d 270, 271 (5th Cir.1972). It contends that losses for failing to provide timely billings are, at best, consequential losses, which are not covered under the terms of the policy.

Plaintiffs respond that whether inaccessibility of accounts receivable records constitutes damage to those records, is an issue of first impression for this court. The issue in *Mendelson* was whether the insurance company was required to pay the costs of reestablishing records of accounts receivable that were destroyed in a fire. *See id.* at 272. Here, Plaintiffs seek the costs of *accounts receivable losses.* Plaintiffs contend that there are not enough facts of record in this case to determine whether inaccessibility of computer records constitutes damage to accounts receivable records. We agree.

When factual disputes are established, the Court "should refuse to grant summary judgment until the facts and circumstances have been sufficiently developed to enable the Court to be reasonably certain that it is making a correct determination of the question of law." *NLRB v. Smith Indus., Inc.,* 403 F.2d 889, 893 (5th Cir. 1968) (internal quotation and citations omitted). Granting summary judgment is inappropriate when factual issues predominate and the non-moving party must be afforded the benefit of any reasonable doubt whether material issues of fact exist. *See Meridian Mutual Ins. Co. v. Hunt,* 168 Mich.App. 672, 425 N.W.2d 111 (1998). Here, there are factual issues as to whether the inaccessibility to the records constituted damage to accounts receivable records. Accordingly, Defendant's motion to summarily dismiss Plaintiffs' claim to accounts receivable losses is DENIED.

## D. STATUTORY APPRAISAL PROCEDURE

 Defendant contends that if the Court determines that coverage exists for Plaintiffs' losses the appropriate remedy, pursuant to Michigan law, is the appraisal provision [7] set forth under the policy heading "Property Loss Conditions." To that end, Defendant requests that the Court determine the remedy for adjudging losses before a fact finder has determined whether Plaintiffs have in fact suffered a loss. However, Defendant concedes that all coverage issues must be resolved before the case can proceed to appraisal. *See Auto-Owners Ins. Co. v. Kwaiser,* 190 Mich.App. 482, 476 N.W.2d 467, 469–70 (1991). Here, several coverage issues have not been resolved. Thus, a determination of what remedy will govern is premature, and the Court declines to do so. Defendant's request that the Statutory Appraisal procedure govern the determination of all coverage issues, if any, is DENIED at this stage of the litigation.

---

7. The appraisal provision in the parties policy provides, in relevant part;

 2. Appraisal

 If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire, A decision agreed to by any two will be binding..... If there is an appraisal, we will retain our right to deny the claim.

## E. EXEMPLARY OR PUNITIVE DAMAGES

 Plaintiffs request "any punitive/exemplary damages the Court deems just and appropriate" for the Defendant's "bad faith" practices. (Compl. at 11 & 12.) Michigan does not recognize an implied contractual duty of good faith, and instead requires proof of tortious conduct to impose punitive and exemplary damages. *See e.g. Dahlman v. Oakland University,* 172 Mich.App. 502, 432 N.W.2d 304, 306 (1988); *Kewin v. Mass. Mutual Life Ins. Co.,* 409 Mich. 401, 295 N.W.2d 50, 56 (1980). Plaintiffs do not claim that there is a good-faith requirement in the policy, nor contend that Defendant engaged in tortious conduct. *See Stockdale v. Jamison,* 416 Mich. 217, 223, 330 N.W.2d 389 (1982) (finding that where the express terms of the contract govern, questions of good or bad faith should not be considered). Therefore, Defendant's motion to summarily dismiss Plaintiffs' claim for punitive or exemplary damages is GRANTED.

## IV.

### Conclusion

**IT IS ORDERED** that Defendant's Motion for Summary Judgment on Plaintiffs' claims under the UTPA, interest costs on lines of credit, and for loss under accounts receivable is DENIED.

**IT IS FURTHER ORDERED** that Defendants Motion to Dismiss Plaintiffs' claims for punitive or exemplary damages, unjust enrichment and attorney fees is GRANTED.

**IT IS SO ORDERED.**